[Cite as *State v. Patterson*, 2017-Ohio-8318.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 105265

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ENNIS R. PATTERSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-606673-A

**BEFORE:** Boyle, J., E.T. Gallagher, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** October 26, 2017

**ATTORNEY FOR APPELLANT**

James J. Hofelich
614 W. Superior Avenue, Suite 1310
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Ronni Ducoff
         Ashley B. Kilbane
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

**{¶1}** The defendant-appellant, Ennis Patterson, appeals his convictions. He raises two assignments of error for our review:

1. Appellant's convictions were against the manifest weight of the evidence.

2. Appellant was denied his right to effective assistance of counsel.

**{¶2}** Finding no merit to his appeal, we affirm.

## I. Procedural History and Factual Background

**{¶3}** The Cuyahoga County Grand Jury indicted Patterson for one count of gross sexual imposition, with a sexually violent predator specification, and one count of kidnapping, with a sexual motivation specification and a sexually violent predator specification. Police arrested Patterson on May 26, 2016, following a report that he molested an eight-year-old child, D.D., while babysitting him on April 16, 2016. Patterson pleaded not guilty to both counts and elected for a bench trial, where the following evidence was presented.

**{¶4}** On May 25, 2016, D.N. was babysitting B.T.'s and Z.T.'s children at B.T.'s house. D.N. testified that, as he was cooking dinner, he overheard D.D., one of B.T.'s children, discussing sexually explicit things with another child. Alarmed, D.N. demanded to know what D.D. was talking about. D.D. told D.N. that Patterson had touched his private parts while babysitting D.D., C.J., and a number of other children at B.T.'s house on April 16, 2016.

**{¶5}** D.N. testified that he immediately tried calling D.D.'s grandmother, C.T., who actually showed up at the house a few moments later. After D.N. told C.T. what D.D. said, C.T. testified that she spoke to D.D., who repeated the story he told to D.N. Becoming extremely upset, C.T. walked over to Patterson's mother's house, where Patterson was staying. After having her knocks go unanswered, C.T. testified that she called B.T. and Z.T., telling them to come to B.T.'s house immediately.

**{¶6}** C.T. testified that while she and D.N. waited for B.T. and Z.T. to arrive, she called and spoke to M.S., her cousin, on the phone asking her to come to the house. Around the same time, B.T.'s cousin, M.J., happened to stop by the house, during which time she also spoke to D.D. and learned about the allegations against Patterson.

**{¶7}** Once B.T. and Z.T. arrived and learned what was going on, Z.T. spoke to D.D. and became enraged. Z.T. and C.T. testified that the adults discussed whether to call the police or go get Patterson themselves. C.T. testified that amidst this discussion, she independently decided to call the police.

**{¶8}** C.T. testified that the first police department she was able to successfully contact was the Cleveland Metropolitan Housing Authority ("CMHA"). Dispatched to the scene for a report of unattended children, CMHA Officer Dustin Kubiak testified that he arrived to discover that the report actually concerned a sexual offense against a child. Following protocol, Officer Kubiak alerted the Cleveland Police Department ("CPD"), which handles sexual offenses. While waiting for the CPD to arrive, Officer Kubiak testified that he spoke with C.T. and one of the aunts on scene and, based on those

conversations, went across the street to Patterson's mother's house and requested that Patterson come outside. While Officer Kubiak detained Patterson and escorted him to his patrol car, C.T. testified that Patterson looked at her and said, "I told them to tell those kids to leave me alone."

{¶9} Eventually, CPD arrived on the scene, took statements from most of the adults present, and placed Patterson under arrest. CPD was unable to take an initial statement from D.D., who was sleeping at the time. CPD subsequently transferred Patterson to jail.

{¶10} Over the next two days, police interviewed Patterson twice, thoroughly questioning him about his involvement with B.T., Z.T., and their children and the allegations against him. At the beginning of both interviews, Patterson signed a form waiving his *Miranda* rights and spoke freely to detectives during most of the two interviews. At some point during the second interview, Patterson expressed that he wanted to speak to an attorney. Despite Patterson's request, the detectives continued to ask Patterson questions, which he continued to answer. Patterson's trial counsel did not file a motion to suppress any statements made during either interview.

{¶11} Prior to trial, the trial court held a competency hearing for both D.D. and C.J., who were allegedly in the room when Patterson touched D.D. and is the daughter of M.J. The court found both children to be competent.

{¶12} At trial, the state called D.N., C.T., M.S., and Z.T., who all recounted fairly consistent versions of the events described above. Specifically, they all testified that

when they individually spoke to D.D., his accounts to each of them were consistent. The state also called D.D. to testify. D.D. testified that on April 16, 2016, he was watching a movie with his cousins at B.T.'s house when Patterson entered the room naked. According to D.D., Patterson removed D.D.'s shirt and shorts and then squeezed his private parts. D.D. also testified that later that evening, he awoke to find Patterson threatening him with an extension cord and telling him not to tell anyone what happened. The state additionally called Officer Kubiak from CMHA, Officer Hess from CPD, and Detective Vowell from CPD's Sex Crimes and Child Abuse Unit. Those witnesses corroborated the events on May 25-26, 2016, and Detective Vowell discussed his interviews with Patterson subsequent to his arrest. Patterson's trial counsel thoroughly cross-examined the state's witnesses, but did not call any witnesses on behalf of Patterson. C.J. was not called to testify by either the state or Patterson.

{¶13} The trial court found Patterson guilty on both counts in the indictment and sentenced him to 20 years to life in prison, ordered him to pay the costs and expenses of the case, and found him to be a Tier III sex offender/child offender registrant. It is from this judgment that Patterson now appeals.

## II. Manifest Weight of the Evidence

{¶14} In his first assignment of error, Patterson argues that his convictions were against the manifest weight of the evidence. We disagree.

{¶15} Unlike sufficiency of the evidence, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *State v. Thompkins*, 78 Ohio

St.3d 380, 387, 678 N.E.2d 541 (1997). Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. *Id.,* citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955).

{¶16} Analyzing a claim under the manifest weight standard requires us to "review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed[.]" *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). We are required to give "due deference" to the factfinder's conclusions because "the demeanor of witnesses, the manner of their responses, and many other factors observable by [the factfinder] * * * simply are not available to an appellate court on review." *State v. Miller*, 8th Dist. Cuyahoga No. 100461, 2014-Ohio-3907, ¶ 58, citing *Thompkins*; *State v. Bailey*, 8th Dist. Cuyahoga No. 97754, 2012-Ohio-3955, ¶ 11, quoting *State v. Bierbaum,* 3d Dist. Seneca No. 13-88-18, 1990 Ohio App. LEXIS 1204 (Mar. 4, 1990). "Further, * * * [we] must keep in mind that questions of weight and credibility are primarily for the trier of fact to determine." *State v. Irby*, 7th Dist. Mahoning No. 03 MA 54, 2004-Ohio-5929, ¶ 39, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Accordingly, reversing a previous conviction and ordering a new trial under a manifest weight of the evidence claim should be saved for the "exceptional case in which the evidence weighs heavily against the

conviction." *State v. Bridges*, 8th Dist. Cuyahoga No. 100805, 2014-Ohio-4570, ¶ 67, citing *Thompkins.*

**{¶17}** In the instant case, Patterson challenges the evidence supporting his convictions, claiming (1) D.D.'s testimony was the only testimony supporting his convictions and his testimony contained inconsistencies and was uncorroborated, and (2) had she testified, C.J. would have told the court that nothing unusual occurred on April 16, 2016, contradicting D.D.'s testimony.

### A. D.D.'s Testimony

**{¶18}** Patterson argues that his convictions were a clear miscarriage of justice because D.D.'s testimony was inconsistent and uncorroborated.

**{¶19}** "It is the province of the [factfinder] to determine where the truth probably lies from conflicting statements, not only of different witnesses, but by the same witness." *State v. Haynes*, 10th Dist. Franklin No. 03AP-1134, 2005-Ohio-256, ¶ 24, quoting *State v. Lakes*, 120 Ohio App. 213, 201 N.E.2d 809 (4th Dist.1964). "A conviction is not against the manifest weight of the evidence solely because the [factfinder] heard inconsistent testimony." *State v. Phillips*, 8th Dist. Cuyahoga No. 103325, 2017-Ohio-1284, ¶ 33, quoting *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387.

**{¶20}** Patterson's argument is similar to the one we rejected in *State v. Martin*, 8th Dist. Cuyahoga No. 90722, 2008-Ohio-5263. In that case, the appellant argued that his convictions were against the manifest weight of the evidence because "the victim, the sole

eyewitness to the events, gave conflicting information to police officers at the time of the incident." *Id.* at ¶ 32. Even though the victim's testimony contained a number of inconsistencies from his earlier statements — such as when the appellant pulled the gun, whether or not the victim had a gun on his person, and where the victim obtained a gun — we found those inconsistencies to be "minor and understandable in light of the fact that [the victim] had just been robbed at gunpoint and shot three times." *Id.* at ¶ 36-38.

{¶21} Likewise, the court in *Malone* rejected a manifest weight of the evidence claim based on inconsistencies in the victim's testimony. *State v. Malone*, 10th Dist. Franklin No. 98AP-278, 1998 Ohio App. LEXIS 5647, *9 (Dec. 1, 1998). In that case, the appellant cited to the eight-year-old victim's conflicting answers when responding to questions about whether her pants were on or off when the defendant touched her private parts. *Id.* at *6. Despite those conflicting answers, the court affirmed the appellant's conviction for gross sexual imposition, noting that "the alleged inconsistencies fail to cast such doubt on the victim's testimony as to render the verdict against the manifest weight of the evidence, especially because [the victim's] statements generally, though not completely, were consistent regarding the act of sexual contact with defendant's penis." *Id.* at *9.

{¶22} Similar to *Martin* and *Malone*, Patterson fails to show any meaningful inconsistencies establishing that his convictions are the exceptional case for which a reversal under a manifest weight of the evidence claim exists. D.D.'s statements concerning the events on April 16, 2016, were largely consistent. The only arguable

inconsistency that Patterson and his counsel continuously stressed at trial — D.D.'s failure to mention Patterson's threatening of him with the extension cord after the assault — was more akin to a detail innocently omitted rather than an inconsistent statement. In fact, during his testimony, Detective Vowell testified that child victims typically omit details in their first interviews with family members and police officers. *See State v. Hartford*, 21 Ohio App.3d 29, 31, 486 N.E.2d 131 (8th Dist.1984) ("Certain details related to the police may naturally not be brought up on direct examination and some details omitted from a witness statement may naturally crop up for the first time at trial, and it is not appropriate to consider the omission of such details to be 'inconsistencies.'").[1] When considering D.D.'s age and the stressful nature of the events on May 25-26, 2016, it is understandable why D.D.'s testimony contained facts not disclosed during his initial interviews with police. Finally, D.D.'s failure to disclose that detail at an earlier time goes directly to the credibility and weight of the evidence, which the trial court was in the best position to consider. *Irby*, 7th Dist. Mahoning No. 03 MA 54, 2004-Ohio-5929, ¶ 39, citing *DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212. Here,

---

[1] At oral argument, there was some discussion on whether *Hartford* was applicable and remained good law. Specifically, appellant's attorney contended that *Hartford* is irrelevant because it concerns the ability to impeach a witness with an earlier statement. But we do not cite *Hartford* for its disposition of the impeachment issue; rather, *Hartford* is relevant based on the above-cited proposition's holding regarding the comparison between omissions and inconsistencies. We have repeatedly cited to *Hartford* for the above proposition and find it to be reliable and relevant to this instant case. *See State v. Washington*, 8th Dist. Cuyahoga Nos. 102337 and 102338, 2015-Ohio-4982, ¶ 37; *State v. Kenney*, 8th Dist. Cuyahoga No. 80653, 2004-Ohio-972, ¶ 9; *State v. Hood*, 8th Dist. Cuyahoga No. 80294, 2002-Ohio-4081, ¶ 26; *State v. Culver*, 8th Dist. Cuyahoga No. 55895, 1989 Ohio App. LEXIS 5214, * 8-9 (Sept. 21, 1989).

the trial court, found that newly added detail was inconsequential to its determination of guilt.

{¶23} Patterson also argues that D.D.'s testimony was not corroborated by other witnesses. The appellant in *Martin* also made a similar argument, pointing to the fact that "there were no other eyewitnesses or physical evidence to corroborate [the victim's] version of the events." *Martin* at ¶ 42. We rejected this argument as well, stating that "[a]lthough physical evidence and eyewitness testimony is helpful to prove a case, it is not necessary." *Id.* We found that the victim's "testimony as to what happened, as well as the three police officers' testimony, was adequate direct and circumstantial evidence for a rational jury to find Martin guilty beyond a reasonable doubt." *Id.* We concluded our opinion, stating, "When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *Id.* at ¶ 43.

{¶24} An appellant made a similar uncorroborated argument in *State v. Derrick*, 8th Dist. Cuyahoga No. 100010, 2014-Ohio-1073. In that case, the appellant argued that his convictions were against the manifest weight of the evidence because the state did not present any other evidence corroborating the victim's testimony. *Id.* at ¶ 28. Considering "the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact," and the fact that the jury found the victim's testimony to be more credible, we rejected the appellant's argument. *Id.,* citing *DeHass*.

**{¶25}** Like *Martin* and *Derrick*, Patterson's corroboration argument also fails. While the state's evidence was not unequivocal of Patterson's guilt, it was surely enough for a rational finder of fact to find Patterson guilty of both crimes. Further, sexual assault cases "are essentially 'one witness' cases" and "are about individual complainant credibility and reliability." Smith, *Representing Rapists: The Cruelty of Cross Examination and Other Challenges for a Feminist Criminal Defense Lawyer*, 53 Am.Crim.L. Rev. 255, 294 (2016). The state presented both direct and circumstantial evidence largely corroborating D.D.'s testimony, and the trial court found that evidence to be credible. Considering that the trial court was in the best position to weigh the credibility of the witnesses' testimony, we are not convinced that Patterson's argument has merit.

### B. Nonexistent Testimony of C.J.

**{¶26}** Finally, Patterson claims that his convictions were against the manifest weight of the evidence because, had C.J. testified, she would have testified that nothing unusual occurred on April 16, 2016.

**{¶27}** Appellants, however, cannot base their manifest weight of the evidence claims on evidence not in the record. *State v. Hicks*, 8th Dist. Cuyahoga No. 83981, 2005-Ohio-1842, ¶ 8; *see also State v. Tyler*, 2d Dist. Montgomery No. 15912, 1997 Ohio App. LEXIS 4328, *19-20 (Sept. 26, 1997) ("In order to raise a question of whether a conviction was against the manifest weight of the evidence, one must point to evidence *in the record* that weighs heavily against the defendant's conviction."). Here, because

Patterson's assertions about what C.J. would have said at trial are mere speculation and were not included in the record, Patterson's arguments concerning evidence outside the record cannot support his first assignment of error.

**{¶28}** Based on the foregoing discussion and our review of the entire record, we are not convinced that Patterson's convictions are the "exceptional" case for which a manifest weight of the evidence claim is reserved.

**{¶29}** Patterson's first assignment of error is overruled.

## III. Ineffective Assistance of Counsel

**{¶30}** In his second assignment of error, Patterson argues that he received ineffective assistance from his trial counsel.    Again, we disagree.

**{¶31}** While "[t]he right to counsel is the right to the effective assistance of counsel," the defendant carries the burden of establishing a claim of ineffective assistance of counsel on appeal.    *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), citing *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *State v. Corrothers*, 8th Dist. Cuyahoga No. 72064, 1998 Ohio App. LEXIS 491, *19 (Feb. 12, 1998), citing *State v. Smith*, 3 Ohio App.3d 115, 444 N.E.2d 85 (8th Dist.1981).    "Judicial scrutiny of defense counsel's performance must be highly deferential."    *State v. Sanchez*, 8th Dist. Cuyahoga No. 103078, 2016-Ohio-3167, ¶ 8, citing *Strickland*.    Further, "trial strategy or tactical decisions cannot form the basis for a claim of ineffective counsel."    *Id.* at ¶ 26, citing *Strickland* and quoting *State v. Foster,* 8th Dist. Cuyahoga No. 93391, 2010-Ohio-3186.

**{¶32}** To gain reversal on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) his "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland* at 687. The first prong of *Strickland*'s test requires the defendant to show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. *Strickland*'s second prong requires the defendant to show "a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Winters*, 8th Dist. Cuyahoga No. 102871, 2016-Ohio-928, ¶ 25, citing *Strickland*.

**{¶33}** When deciding claims of ineffective assistance of counsel, courts may analyze the two prongs out of order. *Id.* at 697; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, * * * that course should be followed." *Strickland* at 697.

### A. Failure to File Motion to Suppress

**{¶34}** Patterson claims that his trial counsel was ineffective for not filing a motion to suppress his statements to police.

**{¶35}** "Failure to file a motion to suppress does not constitute per se ineffective assistance of counsel." *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 28. Instead, a defendant must show that the motion would have "had a reasonable probability of success" and affected the outcome of the case. *Sanchez*, 8th Dist. Cuyahoga No. 103078, 2016-Ohio-3167, ¶ 22; *Moon* at ¶ 28; *see also State v. Kirk*,

8th Dist. Cuyahoga Nos. 95260 and 95261, 2011-Ohio-1687, ¶ 46 ("Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based upon the record, the motion would have been granted."). When scrutinizing an appellant's trial counsel's failure to file a motion to suppress, a reviewing court must decide whether that failure was a tactical decision based on the trial counsel's investigation of the matter. *State v. Spring*, 7th Dist. Jefferson No. 15 JE 0019, 2017-Ohio-768, ¶ 20, quoting *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52.

**{¶36}** Patterson's argument fails because the decision not to file a motion to suppress statements from the second interview with police was a strategic one. At trial, in Patterson's presence, the following exchange took place:[2]

PROSECUTOR: Second issue is in defendant's second interview, he does sign a waiver, he's read his Miranda rights. And at 24:05, the defendant says, I don't want to talk anymore and he says that he wants a lawyer. The officer said, Do you want to reconsider? And the defendant keeps on talking about this incident. * * *

DEFENSE COUNSEL: I may want to address that part. * * * During my conversation with the prosecutors yesterday, I raised concern about what the prosecutor just stated to the Court, that at some point during the second interview my client had suggested, told the officer, the detectives, that he didn't want to continue the interview and that he wanted to have his lawyer and

---

[2] Prior to the above exchange, both parties engaged in a lengthy discussion concerning redactions to Patterson's statements to police concerning Z.T.'s alleged coaching of the children. The discussion lasted over the course of a few days while both parties went back and forth over what to include and what was permissible under the Ohio Rules of Evidence. Ultimately, the court disagreed with the state's proposed redactions of those statements, allowing Patterson's statements concerning the coaching to come in for credibility purposes.

|  |  |
|---|---|
|  | then they continued talking. At any rate, the bottom line is I've had a conversation with my client today and he is aware of that potential suppression issue and we're not going to be objecting — we're not going to raise an argument for suppression, that if they didn't say it continuously in the interview will be acceptable with us. |
| COURT: | So you're not making an objection to that and you're waiving any rights to object? |
| DEFENSE COUNSEL: | Right. |

The record makes it clear that Patterson and his counsel consciously considered whether or not to file a motion to suppress and ultimately decided against it. Therefore, that failure is not a basis on which Patterson can support his ineffective assistance claim.

{¶37} In addition, Patterson fails to make a showing of prejudice under *Strickland*'s second prong. Patterson does not specify which statements were used against him at trial and subject to suppression, and it is not this court's duty to scour the record for those statements. *See Mayfair Village Condominium Owners Assn. v. Grynko*, 8th Dist. Cuyahoga No. 99264, 2013-Ohio-2100, ¶ 6 ("We are not obliged to scour the record in search of evidence to support an appellant's assignment of error."); *In re E.G.*, 9th Dist. Medina No. 16CA0075-M, 2017-Ohio-2584, ¶ 27 ("Conclusions without an evidentiary basis fail to provide this Court with a valid basis on which to disturb the judgment of the trial court. * * *[I]t is not the duty of this Court to scour the record for evidence and construct an argument on an appellant's behalf."). Moreover, despite our freedom to forego any deeper scrutiny of the record, we thoroughly reviewed

the record and were still unable to identify which statements came after Patterson's request for an attorney. As a result, we cannot logically consider whether a motion to suppress unidentified statements would have been successful and affected the outcome of the trial.

**B. Failure to Call C.J. as a Witness**

{¶38} Patterson also claims that his trial counsel was ineffective because it failed to call C.J. as a witness.

{¶39} Trial counsel's decision to call or not call a witness constitutes trial tactics. *State v. Jones*, 8th Dist. Cuyahoga No. 81112, 2003-Ohio-3004, ¶ 32, citing *State v. Hunt*, 20 Ohio App.3d 310, 486 N.E.2d 108 (9th Dist.1984). Tactical decisions by trial counsel hardly ever serve as the basis for a claim of ineffective assistance of counsel because "[t]he defendant must show that the witness's testimony would have 'significantly assisted the defense and affected the outcome of the case.'" *State v. Howard*, 8th Dist. Cuyahoga No. 101359, 2015-Ohio-2854, ¶ 37, quoting *State v. Griffith*, 8th Dist. Cuyahoga No. 97366, 2012-Ohio-2628. In meeting that burden, the defendant must be able to point to evidence in the record; otherwise, "any allegations of ineffectiveness based on facts not appearing in the trial record should be reviewed through the postconviction remedies." *State v. Barnes*, 8th Dist. Cuyahoga No. 92512, 2011-Ohio-63, ¶ 8; *see also State v. Curtis*, 8th Dist. Cuyahoga No. 89412, 2008-Ohio-916, ¶ 8, citing *State v. Cooperrider*, 4 Ohio St.3d 226, 448 N.E.2d 452 (1983) ("The law is well settled that when allegations of ineffective assistance of counsel

hinge on facts not appearing in the record, the proper remedy is a petition for postconviction relief rather than direct appeal.").

{¶40} Here, the decision not to call C.J. as a witness was a tactical one based on the fear of potentially exposing Patterson to additional charges not listed in the current indictment. The record indicates that Patterson agreed with his trial counsel's decision. Further, contrary to Patterson's assertions, the state's disclosure did not indicate that C.J. would have "testified that nothing unusual occurred on April 16, 2016[,]" but instead that she did not "see anything happen with defendant" and D.D. In other words, C.J.'s testimony was not definitive evidence of Patterson's innocence, and Patterson does not specifically identify any other record-based evidence to support his argument that he would have been acquitted had C.J. testified.

{¶41} Even if Patterson sufficiently argued that C.J.'s testimony would have affected the outcome of the case — which he has not, whether this argument is meritorious is not for us to decide on direct appeal. Because Patterson failed to make an offer of proof concerning C.J.'s unheard testimony, the record does not contain any indication of what C.J. would have testified to. As such, his ineffectiveness argument concerning C.J. relies on evidence that is outside the record, and Patterson should pursue his claim of ineffective assistance of counsel through a petition for postconviction relief under R.C. 2953.21.

{¶42} Patterson's second assignment of error is overruled.

{¶43} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.    The defendant's convictions having been affirmed, any bail pending appeal is terminated.    Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR