[Cite as *State v. Russaw*, 2022-Ohio-2145.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,           :

                                   No. 111315

    v.                            :

STANLEY M. RUSSAW,                      :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 23, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-644949-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Kevin Bringman, Assistant Prosecuting
Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and
Noelle A. Powell and Aaron T. Baker, Assistant Public
Defenders, *for appellant*.

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Stanley M. Russaw ("Russaw") appeals his

convictions for rape, sexual battery and gross sexual imposition. Russaw contends

that the jury lost its way in crediting the testimony of the victim, his counsel

rendered ineffective assistance and the trial court plainly erred by instructing the jury of the elements of the offenses after the testimony of the victim. We find that the victim's testimony was not so contradictory that the jury lost its way in crediting her; that the trial court properly instructed the jury because it determined that the jury may be confused regarding the elements of the offenses; that Russaw has not shown that, but for the alleged errors, the outcome of the trial would have been different and, finally, that trial counsel's decision not to pursue a motion to strike or instruction to disregard was a strategic choice. Accordingly, we overrule Russaw's assignments of error and affirm his convictions.

## I. Factual and Procedural Background

{¶ 2} On October 18, 2019, a Cuyahoga County Grand Jury returned a true bill indicting Russaw on five counts: rape, sexual battery and three counts of gross sexual imposition. The scheduled trial was continued several times due to the coronavirus pandemic.

{¶ 3} On July 27, 2021, this case was called for a jury trial. At trial, the state's case rested primarily on the testimony of the victim, T.R.

{¶ 4} T.R. testified that she was a student at the Citizen's Leadership Academy ("CLA") in the sixth grade at the time of the offenses. She identified Russaw as her father and testified that Russaw lived separately from T.R.'s mother. T.R. planned to spend spring break of her sixth-grade year, March 25, 2019, to March 29, 2019, with Russaw at his apartment. At the time of the offenses, T.R.

testified that Russaw had a leg injury that made him limp, but he did not need a walker or cane to get around.

{¶ 5} T.R. testified that she and Russaw visited her paternal grandmother and went to the store before returning to Russaw's apartment. She testified that Russaw then started a "tickle fight" that began "regular at first" but then turned into a massage. Russaw massaged in circles around T.R.'s breasts and then on her breasts in a figure eight motion and licked the deodorant off of her armpit. Later that night, Russaw acted "as a vampire" and said that he "want[ed] to suck [her] blood." He licked her ears and neck and then began "licking my vagina over and over again and he took his finger, he just swiped it." She said "okay, that's enough" but "he just kept going."

{¶ 6} T.R. testified that Russaw later told her not to talk to anyone about the "tickle fight."

{¶ 7} T.R. testified that Russaw came into her room the next day while she was watching YouTube videos. He started to rub her stomach and she said: "I don't like that and stuff." She testified "[a]nd he just was like, I just want to rub you." She testified that he touched her on her armpits, her ears, her neck, her breasts, her stomach and her vagina. She also testified that Russaw rubbed his genitals against her buttocks.

{¶ 8} T.R. testified that she chose to tell her school counselor about these events and not her mother because she was worried that her mother would overreact. She testified that she first told the school counselor, Kathleena Zevallos

("Zevallos"), near the end of the school year. The school counselor called T.R.'s mother and that same day the event was reported to Department of Children and Family Services. Two days later, T.R. was examined by Halle Maziasz ("Maziasz"), a social worker employed by University Hospitals and the Cleveland Clinic.

{¶ 9} T.R. testified that she told the examiner during the examination what had happened to her. She also testified that she drew circles on a piece of paper that had a picture of a body on it to signify where Russaw touched her. She testified that after she talked about the assault, Russaw told her that she should lie to the court and say that "it was a prank."

{¶ 10} During cross-examination, Russaw's counsel elicited testimony that T.R. had changed schools from Central to Citizens Leadership Academy ("CLA"). T.R. testified that she had changed schools because she kept getting into fights at Central and had been bullied. She testified that Russaw wore a bandage which covered "his whole leg * * * [from the top of his leg d]own to his ankle" but T.R.'s testimony was unclear on whether it was Russaw's left or right leg that was injured.

{¶ 11} During cross-examination, T.R. testified that Russaw had touched her breasts but, in the anatomical pictures, T.R. had not circled the breasts. T.R.'s explanation was that the interviewer "asked where he mainly touched me." T.R. also testified that she told the social worker that Russaw "went figure eight" meaning that he had touched her breasts that way.

{¶ 12} T.R. testified that she returned to school the week after spring break. She wore a "black hoodie" and when a teacher asked her to remove the hoodie, T.R.

simply left the classroom. T.R. also had an argument with Russaw because she thought that he was focusing on her brother and neglecting her. It would be weeks later, on May 17, 2019, before T.R. told Zevallos about the abuse.

{¶ 13} Following T.R.'s testimony, the trial court broke for the evening. The next day, before the subsequent witnesses testified, the trial court instructed the jury on the elements of the offenses. The court explained that the reason for these instructions was:

> I just want to make sure, get you — continue to get you acquainted with the elements of the charges in this case so that by the time you go back to deliberate you'll be fully conversant with them.

{¶ 14} The major difference between these instructions and the instructions the trial court gave before voir dire is that these instructions included a specific section on the differences between sexual contact and sexual conduct.

> And the reason I have been saying with strange emphasis either sexual conduct for [C]ounts 1 and 2, or sexual contact for [C]ounts 3, 4 and 5, is that they are two different things. So for the rape and the sexual battery charges, sexual conduct does include cunnilingus and without the privilege to do so the insertion, however slight, of any part of the body into the vaginal opening of another. Penetration, however slight, is sufficient to complete vaginal intercourse.

> For the three GSI charges, sexual contact means any touching of an erogenous zone of another including without limitation the thigh, genitals, buttock, pubic region or if the person is a female a breast for the purpose of sexually arousing or gratifying either person.

> So just keep in mind for the first two counts we are talking about sexual conduct and for the last three sexual contact.

{¶ 15} Defense counsel did not object to these instructions.

{¶ 16} After T.R. testified, the state next called Zevallos. Zevallos testified that she worked at CLA from December 2017 to August 2019. She started working for CLA as an intervention specialist and then took on the role of a guidance counselor. In this role, she helped students with social and emotional behaviors as well as executive functioning skills (skills like working memory, task analysis, keeping things organized and functioning in the classroom).

{¶ 17} According to Zevallos, T.R. had been to see her many times. Zevallos testified that T.R. was disruptive in class and would either leave or be asked to leave by the teacher up to three times a day. Zevallos testified that T.R. was disciplined for these infractions including at least one suspension. Zevallos called and interacted with T.R.'s father several times, who had normal interactions and showed concern. Zevallos testified that spring break that year took place between March 25, 2019, and March 29, 2019, with the students returning on April 1, 2019. On May 17, 2019, T.R. visited Zevallos and

> [T.R.] explained that she had been staying with her father and that they had been playing and then he had progressively moved down, he initially had been tickling her stomach then it moved down to below her waist.

{¶ 18} Zevallos notified the principal and contacted Children and Family Services. Zevallos testified that T.R. made this statement with a "flat affect." The following inquiry followed:

> Q. And in your experience as someone who has been trained specifically in trauma, is that unusual when someone is disclosing a traumatic event?
>
> A. No.

Q. Have you in fact seen that in individuals who are disclosing or discussing traumatic events?

A. Yes.

Q. What else may be some signs or behaviors that individuals have after they've experienced trauma?

[DEFENSE:] Objection. She isn't qualified as an expert.

THE COURT: I understand the basis of your objection. Sustained.

{¶ 19} The state then called Maziasz. Maziasz testified that her job was to assist emergency room physicians by speaking with the family and the patient in order to obtain information for proper medical care and treatment and then discuss "with the attending, the fellow, the resident and together we determine the proper course of treatment." Maziasz identified the medical records of T.R.'s visit. She also read T.R.'s narrative of Russaw's actions into the record.

{¶ 20} T.R. was referred for an external exam that consisted of a "basic skin check, checking heart lungs, breathing, things like that."

{¶ 21} The state next called Ada Jackson ("Jackson"), a social worker employed by the sex abuse unit of the Cuyahoga County Children and Family Services. Jackson testified that she conducted a forensic interview with T.R. on May 23, 2019. The purpose of this interview was

> [t]o investigate the allegations, to ensure a safety wellbeing of the child and to also refer if the family is wanting medical or mental health services.

{¶ 22} Jackson authenticated state's exhibit No. 22, a videotaped record of Jackson's interview with T.R. She also authenticated anatomical drawings used in the interview.

{¶ 23} On cross-examination, Jackson agreed that she coordinated with police prior to the interview. At one point during the interview, Jackson left the room to ask the detective whether they wanted her to ask any questions. She testified that she asked the questions she did because those were the questions she thought to ask. She also agreed that the anatomical drawings used in the interview were undated and did not indicate the interviewer.

{¶ 24} Russaw was found guilty of all counts. The parties stipulated that the rape (Count 1), sexual battery (Count 2) and one charge of gross sexual imposition (Count 3) were allied offenses of similar import. The trial court sentenced Russaw to life imprisonment with first parole eligibility after ten years for the rape, a prison term of 12 months for Count four (gross sexual imposition) and a prison term of 12 months for Count 5 (gross sexual imposition). The court ordered all three prison terms to be served concurrently. The court also imposed five years of postrelease control in Counts 4 and 5.

{¶ 25} Russaw appeals and assigns the following errors for our review:

Assignment of Error I: Mr. Russaw's conviction is against the manifest weight of evidence in violation of his rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the State of Ohio Constitution.

Assignment of Error II: Mr. Russaw was denied his right to due process and a fair trial as guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when the court gave partial jury instructions regarding the elements of the charged offenses following the testimony of the alleged victim.

Assignment of Error III: Mr. Russaw received ineffective assistance of counsel in violation of his rights to a due process and a fair trial guaranteed to him by the Sixth and Fourteenth Amendments, United States Constitution and Article I, Section 10, Ohio Constitution, when counsel failed to object to the court giving partial jury instructions regarding the elements of the charged offenses following the testimony of the alleged victim.

Assignment of Error IV: Mr. Russaw received ineffective assistance of counsel in violation of his rights to a due process and a fair trial guaranteed to him by the Sixth and Fourteenth Amendments, United States Constitution and Article I, Section 10, Ohio Constitution, when counsel failed to make a timely objection or request further instructions to the jury when a layperson testified as an expert on trauma.

## II. Law and Analysis

Assignment of Error I: Mr. Russaw's conviction is against the manifest weight of evidence in violation of his rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the State of Ohio Constitution.

{¶ 26} Russaw's first assignment of error contends that his conviction is against the manifest weight of the evidence.

{¶ 27} A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree "with the

factfinder's resolution of * * * conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility and determine whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 28} Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175. A conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent or contradictory testimony. *State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, ¶ 72. Even where discrepancies exist, eyewitness identification testimony alone is sufficient to support a conviction so long as a reasonable juror could find the eyewitness testimony to be credible. *State v. Robinson*, 8th Dist. Cuyahoga No. 100126, 2014-Ohio-1624, ¶ 12.

{¶ 29} Here, Russaw contends that the evidence produced by the state at trial did not attain "the high degree of probative force and certainty required for a criminal conviction." *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1988). Specifically, Russaw argues that the entire case hinged on T.R.'s credibility and Russaw contends that her "credibility was strongly in question because of a history

of behavioral issues, the timing of her disclosure, and inconsistencies that make the allegations highly implausible."

{¶ 30} Russaw states that the jury lost its way in crediting T.R. insofar as she had a history of fighting and delinquency that caused her to change her school to CLA. T.R. admitted on the stand she did occasionally act out with the goal of gaining attention. Finally, Russaw contends that T.R. "passed up numerous opportunities to report the incidents after she was back home and away from her father."

{¶ 31} Russaw also contends that T.R.'s testimony should not be credited because T.R.'s testimony concerning the precise nature of Russaw's injured leg was not consistent with his actions of raping her. However, T.R. consistently explained that Russaw did not need a walker or cane to get around and was capable of driving himself. T.R. struggled to remember which leg was injured and the precise nature of the brace or bandage, but we cannot say that T.R.'s testimony on Russaw's injury was so contradictory that a jury could not, as a matter of law, credit her testimony. Finally, no evidence in the record exists of the nature of Russaw's injury aside from T.R.'s testimony.

{¶ 32} Russaw next contends that there were two significant differences between the anatomical drawings on which T.R. drew circles and T.R.'s trial testimony. First, T.R. testified that Russaw touched her breasts in a "figure eight" motion. T.R.'s breasts were not circled in the anatomical drawings. T.R. testified that she was asked where Russaw "mainly" touched her. T.R. also testified that when she told the interviewer that he went "figure-eight" on her she meant that Russaw

had touched her breasts. Furthermore, state's exhibit No. 23, T.R.'s medical records, had an intake summary that included a narrative where she stated Russaw "was rubbing my breasts."

{¶ 33} Second, Russaw claims that when T.R. first described the assault during her testimony, she did not testify that Russaw touched her "butt." Only after the prosecutor specifically asked about that mark on the anatomical drawings did T.R. state that Russaw touched her there.

{¶ 34} Based on these perceived discrepancies, Russaw argues that T.R.'s account of the events was untrue and that the jury lost its way in crediting her testimony. However, T.R. specifically explained on cross-examination why she believed that her testimony was consistent with the interview.

{¶ 35} This court has previously determined that inconsistencies like these are not sufficient to establish that the jury lost its way. In *State v. Stratford*, 8th Dist. Cuyahoga No. 110767, 2022-Ohio-1497, ¶ 28, the appellant argued that the lack of a "contemporary outcry witness"; the implausibility of the rape allegation (appellant was convicted of raping his daughter while his wife was asleep in the same bed); lack of corroborating evidence and that the witnesses account was marred by contradictions and inconsistencies. "There is no playbook for how a child would react to sexual assault or the way in which the assault 'typically' occurs. We cannot say that [the child's] reaction to and description of what occurred is so out of the realm of possibility that it lacks credibility." *Stratford* at ¶ 28.

{¶ 36} Much like in *Stratford*, we cannot say that T.R.'s reaction is so out of the realm of possibility that it lacks credibility. *See also State v. Hernandez*, 2018-Ohio-738, 107 N.E.3d 182, ¶ 29-31 (8th Dist.) (rejecting a manifest weight challenge to similarly inconsistent testimony); *State v. Patterson*, 2017-Ohio-8318, 99 N.E.3d 970, ¶ 22 (8th Dist.) ("When considering D.D.'s age and the stressful nature of the events[,] it is understandable why D.D.'s testimony contained facts not disclosed during his initial interviews with police."). Accordingly, we overrule Russaw's first assignment of error.

> Assignment of Error II: Mr. Russaw was denied his right to due process and a fair trial as guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when the court gave partial jury instructions regarding the elements of the charged offenses following the testimony of the alleged victim.

> Assignment of Error III: Mr. Russaw received ineffective assistance of counsel in violation of his rights to a due process and a fair trial guaranteed to him by the Sixth and Fourteenth Amendments, United States Constitution and Article I, Section 10, Ohio Constitution, when counsel failed to object to the court giving partial jury instructions regarding the elements of the charged offenses following the testimony of the alleged victim.

{¶ 37} Russaw's second and third assignments of error are related and so we address them together. Russaw's second assignment of error contends that the trial court erred by instructing the jury on the elements of the offenses after the testimony of T.R. Russaw's third assignment of error contends that he received ineffective assistance of counsel insofar as his counsel did not object to the charge.

{¶ 38} For his second assignment of error, Russaw contends that "it is not so much what the court said but when." That is, Russaw does not contend that the trial

court's instruction misstated the law. Instead, Russaw contends that the fact these instructions were given when they were given establishes reversible error. Russaw concedes that there was no objection before the trial court and concedes that he must show plain error for this court to sustain his second assignment of error. "To prevail under a plain error analysis, the appellant bears the burden of demonstrating that, but for the error, the outcome of the trial would clearly have been different." *State v. Bond*, 8th Dist. Cuyahoga No. 110022, 2022-Ohio-1487, ¶ 10.

{¶ 39} For Russaw's third assignment of error he "must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that deficient performance." *Id.* at ¶ 20, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Strickland's prejudice inquiry focuses on the likelihood that, 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, ¶ 144, quoting *Strickland* at 694.

{¶ 40} Both the second and third assignments of error require Russaw to show that but for the alleged errors the outcome of the trial would have been different.

{¶ 41} Russaw argues that the trial court gave the instructions to the jury "immediately after the accuser's testimony[.]" This is not entirely accurate. T.R. testified on Tuesday, July 27, 2021. The trial court gave the disputed charge on Wednesday, July 28, 2021. There was no intervening testimony of other witnesses,

but the trial court did not give the additional charge until the morning after T.R.'s testimony.

{¶ 42} Russaw contends that the trial court's instructions constitute plain error because they "encouraged the jurors to do exactly what they are instructed not to do — form an opinion before the case is submitted to them." Further, Russaw contends that the trial court's instruction prejudiced the defense because the charges were identified before Russaw's motion for judgment of acquittal under Crim.R. 29, and before Russaw had any opportunity to propose instructions under Crim.R. 30.

{¶ 43} However, Russaw did in fact make his motion under Crim.R. 29 and he assigns no error with respect to the trial court's denial of that motion. Nor does Russaw point to any error in the instructions given, nor any additional instruction he would have requested that could have resulted in a different outcome at trial. Neither of those arguments can establish plain error or ineffective assistance of counsel.

{¶ 44} As to Russaw's remaining argument, the trial court had previously instructed the jury on the elements of the offenses prior to voir dire. Russaw assigns no error with respect to these earlier instructions. It is clear in the transcript that the trial court decided it was necessary to provide further instruction. Materially, the major difference between the two instructions given was the trial court's clarification that the first two counts require proof of "sexual conduct" and the remaining three counts require proof of "sexual contact."

{¶ 45} Under these circumstances, Russaw has not shown that the outcome of the trial would have been different but for the trial court's instructions after the testimony of T.R. Russaw has neither shown that the trial court plainly erred in giving these instructions nor has Russaw shown that his counsel provided ineffective assistance. We overrule Russaw's second and third assignments of error.

> Assignment of Error IV: Mr. Russaw received ineffective assistance of counsel in violation of his rights to a due process and a fair trial guaranteed to him by the Sixth and Fourteenth Amendments, United States Constitution and Article I, Section 10, Ohio Constitution, when counsel failed to make a timely objection or request further instructions to the jury when a layperson testified as an expert on trauma.

{¶ 46} Russaw's fourth assignment of error contends that Russaw's trial counsel provided ineffective assistance in failing to object sooner or to request further instructions with respect to a witness offering an uncertified expert opinion concerning the behavior of victims of abuse.

> Q. And in your experience as someone who has been trained specifically in trauma, is that unusual when someone is disclosing a traumatic event?
>
> A. No.
>
> Q. Have you in fact seen that in individuals who are disclosing or discussing traumatic events?
>
> A. Yes.
>
> Q. What else may be some signs or behaviors that individuals have after they've experienced trauma?
>
> A. Withdrawal.
>
> [DEFENSE]: Objection. She isn't qualified as an expert.
>
> THE COURT: I understand the basis of your objection. Sustained.

{¶ 47} Russaw contends that this testimony demonstrates ineffective assistance of counsel insofar as his counsel failed to either object to the initial question or seek a motion to strike the testimony or an instruction to the jury to disregard this testimony.

{¶ 48} "Whether trial counsel could have requested the trial court to strike the testimony and/or issue a limiting instruction 'involved strategic choices of counsel that fell within the realm of trial strategy and tactics that will not ordinarily be disturbed on appeal.'" *State v. Durham*, 8th Dist. Cuyahoga No. 94747, 2012-Ohio-2053, ¶ 12, quoting *State v. Warner*, 8th Dist. Cuyahoga No. 95750, 2011-Ohio-4096. *See also State v. Ford*, 8th Dist. Cuyahoga No. 105698, 2018-Ohio-2128, ¶ 46. Here, trial counsel may have decided that moving to strike or asking for a limiting instruction may well have served no purpose other than highlighting this testimony for the jury. We overrule Russaw's fourth assignment of error.

{¶ 49} Having overruled Russaw's assignments of error, we affirm the judgment of the trial court.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

ANITA LASTER MAYS, J., CONCURS;
SEAN C. GALLAGHER, A.J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, A.J., CONCURRING IN JUDGMENT ONLY:

{¶ 50} Although I agree with the outcome reached by the majority, I would limit our analysis in this case to Russaw's failure to demonstrate the claimed errors affected the outcome of the proceeding, an analysis necessary to demonstrating plain error and ineffective assistance of counsel. App.R. 16(A)(7).

{¶ 51} Russaw is challenging the trial court's handling of jury instructions, which can only be reversed upon the finding of plain error in light of the failure to object at trial and the effectiveness of his trial counsel. Under both standards, the defendant bears the burden of demonstrating that the errors must have affected the outcome of trial. *State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821, ¶ 33, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860.

{¶ 52} In the second, third, and fourth assignments of error, all of which are based on the plain error or ineffective assistance of counsel standards, Russaw focuses on the alleged error, to the exclusion of presenting any analysis upon which

he could have demonstrated an effect on his substantial rights.[1] "'[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them.'" *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part). If the appellant fails to present the complete discussion on the relevant standard of review, our inquiry begins and ends there. We cannot supplement the arguments presented on the appellant's behalf.

{¶ 53} For these reasons, I concur with the outcome.

---

[1] In the second assignment of error, Russaw altogether failed to discuss the second part of the plain error standard, the outcome determinative element, and in the third and fourth assignments of error, Russaw's discussion was limited to a single conclusory sentence addressing the second prong of the *Strickland* standard: (1) "Had counsel not failed to object when the court was bolstered Jane Doe's testimony and encouraged the jury to form an opinion after only Jane Doe's testimony, there is a reasonable probability of a different outcome"; and (2) the disputed "testimony confirming that trauma victims may present in a 'flat' way bolstered Jane Doe's credibility and that means that there was a 'reasonable probability' of a different outcome had counsel asked the jury to disregard that information."