[Cite as *State v. Hughes*, 2013-Ohio-1550.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98667 and 98668**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES E. HUGHES

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-560001 and CR-560002

**BEFORE:** Kilbane, J., S. Gallagher, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 18, 2013

**ATTORNEY FOR APPELLANT**

Michael Heffernan
75 Public Square
Suite 700
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Brad S. Meyer
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} This appeal is a companion case to *State v. Hughes*, 8th Dist. No. 98666, 2013-Ohio-1037.

{¶2} In this consolidated appeal, defendant-appellant, James Hughes ("Hughes"), appeals his convictions in two separate cases. For the reasons that follow, we affirm.

{¶3} In Case No. CR-560001, Hughes was charged with breaking and entering, vandalism, theft, and possessing criminal tools. These charges named Agez and Stagez childcare center in Bedford, Ohio as the victim. In Case No. CR-560002, Hughes was indicted with the same charges for breaking and entering into a Dunkin' Donuts in Bedford, Ohio.

{¶4} In May 2012, both cases proceeded to trial. Prior to the start of the trial, defense counsel objected to the joinder of both cases for trial. The trial court denied defense counsel's motion, and both cases proceeded to trial before the jury. The following evidence was adduced at trial.

{¶5} Leslie Coggins ("Coggins") of Agez and Stagez childcare testified that on April 11, 2011, she received a call from her security company that there was trouble with the front door sensor. The security company also called the Bedford police, who responded to the daycare center. When Coggins arrived at Agez and Stagez, the police were already on the scene. The glass front door was shattered and there was damage to the front door lock. The back door had pry marks on it near the security latch. She

further testified that papers on the front counter were strewn everywhere. The office door was kicked in, file and desk draws were pulled out, and papers were tossed about the room.

{¶6} In addition, Coggins testified that Agez and Stagez is equipped with eight security cameras, which captured the incident. The video was played for the jury, and Coggins testified about the events depicted on the video. According to Coggins, a man wearing a hooded sweatshirt, later identified as Hughes, broke the glass on the front door and entered the childcare center. He then went to the front counter and threw papers around before heading to the back of the building. While at the back of the building, Hughes looked around, kicked open the office door, and went into her office. He went through her file cabinet and desk drawers, and then exited the building.

{¶7} Montaz Alsayed ("Alsayed") testified that he is the owner-manager of a Dunkin' Donuts in Bedford, Ohio. When he arrived to work on June 14, 2011, he found his office door broken. He proceeded to the front of the store to find broken glass from the drive-thru window, donuts on the floor, and the cash register drawers open. He called 911 and waited for the police to arrive. Alsayed testified that a total of $1,000 in cash was taken from the registers and a change safe.

{¶8} Alsayed further testified that the Dunkin' Donuts is equipped with security cameras, which captured the incident. This video was also played for the jury, and Alsayed testified about the events depicted on the video. According to Alsayed, a man, later identified as Hughes, smashed through the drive-thru window with a sledge hammer.

Hughes took money from two cash registers and a change safe under the counter. Hughes was carrying a dark bag with him and was wearing a hooded sweatshirt. He proceeded to the back, where the office is located. He went into the office and then continued out the back door. Before exiting, Hughes looked directly into the security camera.

{¶9} Officer Matthew Grams ("Grams") of the Northfield Village Police Department testified that he was on patrol on the night of August 13, 2011, when he observed a vehicle leaving from a local business at a high rate of speed. The vehicle drove over the curb and headed westbound on Vincent Avenue, which is a dead-end street. Grams followed the vehicle and effectuated a traffic stop. Grams approached the vehicle, identified the driver as Hughes, and checked his identification. Hughes was driving with a suspended license, so Grams arrested him for driving under suspension. Grams testified that Hughes was wearing a gray hooded sweatshirt, which he stated was "abnormal for the time of year." The sweatshirt had two front pockets with a zipper, a small tear in the front, and a tear in the back along the left shoulder.

{¶10} Grams completed an inventory of Hughes's vehicle. Grams found a pair of "Mechanix" gloves on the floor of the driver's side, and a black bag on the front passenger seat. Grams testified that the bag contained a crowbar, sledge hammer, white shirt, and broken glass. Grams identified Hughes as the perpetrator at both the Agez and Stagez childcare center and Dunkin' Donuts break-ins from the surveillance videos. He further testified that the gray hooded sweatshirt in the videos appeared to have the same

tear in the back left shoulder as the gray hooded sweatshirt Hughes wore when he arrested him.

{¶11} Detective Buck Kidd ("Kidd") of the Bedford Police Department testified that he was assigned to the investigation of both incidents. He obtained the surveillance videos from Coggins and Alsayed and sent out still photos of Hughes's face to surrounding cities in an attempt to identify Hughes. In December 2011, Kidd learned from a Beachwood police detective that Hughes was the possible suspect. Kidd obtained Hughes's driver's license photo and compared it to the photos from both videos. He identified Hughes as the perpetrator in the Agez and Stagez video and the Dunkin' Donuts video. Kidd further testified that Hughes appeared to be wearing the same glasses in the Agez & Stagez video and in his Northfield Village Police Department booking photo. Hughes also wore distinct gloves, which could be observed in the Agez and Stagez video. The videos captured Hughes using a crowbar to break in to both places, which was similar to the one found in his car. Kidd testified that Hughes was also captured on video with a gray hooded sweatshirt that had a distinctive tear over the left shoulder, which appeared as the same sweatshirt worn by Hughes when he was arrested by Grams.

{¶12} At the conclusion of the State's case, the trial court granted Hughes's motion to dismiss Count 3 (theft) in Case No. CR-560001, and in Case No. CR-560002, the State dismissed Count 3 (vandalism). In Case No. CR-560001, the jury found Hughes guilty of breaking and entering (Count 1), vandalism (Count 2), and possessing

criminal tools (Count 4). In Case No. CR-560002, the jury found him guilty of breaking and entering (Count 1), theft (Count 2), and possessing criminal tools (Count 4).

{¶13} In June 2012, the trial court sentenced Hughes in Case No. CR-560001 to ten months in prison on each count, to be served consecutively, for an aggregate of 30 months in prison. In Case No. CR-560002, the trial court sentenced him to ten months in prison on each of Counts 1 and 4, to be served consecutively, and six months in jail on Count 2, to be served concurrently to Counts 1 and 4, for an aggregate of 20 months in prison. The trial court ordered that the sentences in both cases be served consecutively, for a total of 50 months in prison.

{¶14} Hughes now appeals, raising the following three assignments of error for review, which shall be discussed together where appropriate.

## ASSIGNMENT OF ERROR ONE

[Hughes's] conviction was against the sufficiency of the evidence.

## ASSIGNMENT OF ERROR TWO

[Hughes's] conviction was against the manifest weight of the evidence.

## ASSIGNMENT OF ERROR THREE

The trial court abused its discretion and denied [Hughes] the right to a fair trial by joining two separate cases, which taken together, prejudiced [Hughes] to such an extent that a fair trial was impossible.

## Sufficiency of the Evidence

**{¶15}** In the first assignment of error, Hughes argues that the State failed to present sufficient evidence to sustain his convictions. The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:

> Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

**{¶16}** Hughes argues there is insufficient evidence to sustain his convictions because his identity was not proven beyond a reasonable doubt. We disagree.

**{¶17}** Both of these incidents were captured on video, which the jury had the opportunity to view. Grams and Kidd watched these videos and in their testimony identified Hughes as the perpetrator at both Agez and Stagez and Dunkin' Donuts. Furthermore, at the time of Hughes's arrest, he was caught with what appeared to be the same items used in the videos during both break-ins. In the Agez and Stagez video, he appeared to be wearing the same gloves and glasses, and carrying a crowbar that Grams found after arresting Hughes. Additionally, in the Dunkin' Donuts video, Hughes appears to be wearing the same gray hooded sweatshirt and carrying a black bag with the crowbar and sledge hammer. When viewing this evidence in a light most favorable to the State, we find sufficient evidence identifying Hughes as the perpetrator.

{¶18} Therefore, the first assignment of error is overruled.

Manifest Weight of the Evidence

{¶19} In the second assignment of error, Hughes argues that his convictions are against the manifest weight of the evidence. With respect to a manifest weight challenge, the Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, has stated:

> [T]he reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.
>
> {¶20} Moreover, an appellate court may not merely substitute its view for that of

the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*.

{¶21} Hughes argues the jury "lost its way" because the witnesses failed to identify him and the "evidence presented was similar in nature to some items found in [his] care during a traffic stop."

{¶22} Here, both Grams and Kidd identified Hughes as the perpetrator at Agez and Stagez and Dunkin' Donuts. At the time of Hughes's arrest, he was wearing glasses and

a gray hooded sweatshirt. Grams found a pair of "Mechanix" gloves and a black bag containing a crowbar and sledge hammer in Hughes's car. Grams and Kidd testified that these items appear to be the same items he used during the break-ins. Based on this evidence, we cannot say the jury clearly "lost its way" and created such a manifest miscarriage of justice that Hughes's convictions must be reversed and a new trial ordered.

{¶23} Therefore, the second assignment of error is overruled.


Joinder

{¶24} In the third assignment of error, Hughes argues the trial court abused its discretion when it joined the trial of Cases CR-560001 and CR-560002. He claims the jury was confused by the joinder, and the joinder caused an unfavorable impression as to his character.

{¶25} We initially note that while defense counsel objected to the joinder at the beginning of trial, counsel did not renew his objection to the joinder at the close of the State's evidence or at the conclusion of all the evidence. As a result, he has waived all but plain error. *State v. Owens*, 51 Ohio App.2d 132, 146, 366 N.E.2d 1367 (9th Dist.1975); *see also State v. Saade*, 8th Dist. Nos. 80705 and 80706, 2002-Ohio-5564, ¶ 13, *discretionary appeal not allowed*, 98 Ohio St.3d 1479, 2003-Ohio-974, 784 N.E.2d 711; *State v. Hill*, 8th Dist. No. 80582, 2002-Ohio-4585; *State v. Fortson*, 8th Dist. No. 78240, 2001 Ohio App. LEXIS 3404 (Aug. 2, 2001). Under Crim.R. 52(B), notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and

only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined that, but for the error, the outcome of the trial clearly would have been otherwise. *Id.* at paragraph two of the syllabus.

{¶26} Generally, the law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged are of the same or similar character. *Saade* at ¶ 11, citing *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). However, if joinder would prejudice a defendant, the trial court is required to order separate trials. Crim.R. 14. It is the defendant who bears the burden of demonstrating prejudice and that the trial court abused its discretion in denying severance. *Saade* at ¶ 12, citing *State v. Coley*, 93 Ohio St.3d 253, 2001-Ohio 1340, 754 N.E.2d 1129. A defendant's claim of prejudice is negated when: (1) evidence of the other crimes would have been admissible as "other acts" evidence under Evid.R. 404(B); or (2) the evidence of each crime joined at trial is simple and direct. *Lott* at 163.

{¶27} In the instant case, joinder was proper because the offenses are of similar nature and based on the same course of conduct. The evidence in each case was simple and direct, and there is no indication in the record that the jury confused the evidence as to the different counts or that it was influenced by the cumulative effect of the joinder. Both crimes were committed two months apart in the city of Bedford, both crimes were investigated by the same detective, and most importantly, both incidents were recorded on video surveillance cameras. The jury was able to observe Hughes on both videos taken

from Agez and Stagez and Dunkin' Donuts. In both videos, Hughes is identifiable and appears to be wearing the same torn gray hooded sweatshirt. Thus, it cannot be said that Hughes was prejudiced by the joinder.

{¶28} Accordingly, the third assignment of error is overruled.

{¶29} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR