ANITA LASTER MAYS, J.:
*508 {¶ 1} Defendant-appellant Earron Raymond Lee ("Lee") appeals his convictions and asks this court to reverse his convictions and remand to the trial court for further proceedings. We affirm.
{¶ 2} Lee was found guilty of two counts of aggravated robbery, a first-degree felony, in violation of R.C. 2911.01(A)(1) ; four counts of robbery, a second-degree felony, in violation of R.C. 2911.02(A)(1) and (2) ; two counts of robbery, a third-degree felony, in violation of R.C. 2911.02(A)(3) ; one count of kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(2) ; and two counts of petty theft, a first-degree misdemeanor, in violation of R.C. 2913.02(A)(1). Each count, with the exception of the two petty theft counts, contained a one-and three-year firearm specification. The trial court merged the aggravated robbery and robbery counts, and the state elected to have Lee sentenced on just the aggravated robbery counts. The trial court sentenced Lee to a total of 14-years imprisonment and advised Lee that he would be placed on postrelease control for five years following his prison term.
I. Facts
A. Voir Dire
{¶ 3} Lee exercised his right to a jury trial. During voir dire, the state excused one of the African-American jurors. Lee's counsel challenged the state's request and stated, "[s]o, judge, before I get to mine, I'll just make a Batson challenge in the sense that there's two African-American jurors out of 22, and number 12 is African-American." (Tr. 485.) The trial court replied, "[a]ll right. Does the State of Ohio wish to place neutral reasons for excusing juror number 12?" (Tr. 486.) The state answered the trial court by stating,
Yes. It's not his race. It's the fact that as a pastor he's been involved with the criminal justice system before. He's been here for sentencings. He is involved. He's involved at the juvenile detention center. He's an advocate for victims, both victims or defendants. And the fact that he's assisted family members that were accused of crimes.
(Tr. 486.) To which the trial court replied, "Okay. So for those neutral reasons I'll deny the Batson Challenge." (Tr. 486.)
B. Trial
{¶ 4} On May 14, 2016, Liam McDonald ("McDonald"), a pizza delivery driver for Marco's Pizza, testified that he went to deliver a pizza to a Cleveland Heights address. After parking his car and exiting the vehicle, he approached the residence and was confronted by Lee. McDonald asked if Lee ordered a pizza, but Lee did not respond and instead pointed a small gun at McDonald. Two other men approached McDonald and surrounded him. Lee demanded that McDonald get on the ground and hand over his keys and wallet. As McDonald hesitated, Lee pressed the gun to McDonald's head and stated, "someone is going to get popped." (Tr. 532.) McDonald threw his keys, the pizza, and his cell phone on the ground. Lee took the pizza and McDonald's keys and drove away in McDonald's vehicle. No one took his cell phone so McDonald called his boss Gregory Garbaloff ("Garbaloff") to report the incident. Garbaloff called 911. Police officers from the Cleveland Heights Police Department arrived and took McDonald's statement. During a photo array conducted by a blind administrator, McDonald identified one man with 50 percent certainty and Lee with 60 percent certainty.
{¶ 5} On May 18, 2016, Mark Churchill ("Churchill"), a pizza delivery driver for Pizza Hut, testified that he went to deliver *509 a pizza to another Cleveland Heights address. As Churchill approached the residence, Lee confronted him with a gun and told Churchill to "drop everything." (Tr. 793.) Churchill quickly dropped everything in his hands, including the pizza and his car keys. He then ran down the street. Lee pursued Churchill, but stopped after another car turned onto the street. Churchill was able to flag down a police cruiser and explain what happened. The police officer went back to the crime scene.
{¶ 6} Lee's codefendant Bernie Burkhalter III ("Burkhalter") testified at trial that he and Lee planned and executed both robberies. Burkhalter stated that he, Lee, and another man decided to rob a pizza deliveryman. On May 14, 2016, from his cell phone, Lee called the order and then proceeded down the street to wait for the pizzas to arrive. Once McDonald arrived, Lee confronted him with a small, black gun, pointed it at McDonald, and threatened to shoot him. Burkhalter picked up the pizzas and ran back to the house where Lee eventually arrived. Burkhalter testified that on May 18, 2016, he and Lee planned another robbery of a Pizza Hut delivery driver. Lee placed the order on his phone. Lee and Burkhalter approach Churchill, and Lee pointed a gun and told Churchill to drop everything. The deliveryman ran away, and Lee started chasing him. Burkhalter again picked up the pizzas and ran back to the house where he met Lee.
{¶ 7} The three officers that responded to the May 14, 2016 robbery testified. Officer Antoine Danford testified that he located McDonald's stolen, unoccupied vehicle around the corner from the robbery. The keys were still in the ignition, and the vehicles were searched prior to being towed. Officer Trevor Harris testified that he collected fingerprints, DNA swabs, and other evidence from the vehicle. Sergeant Michael D'Amico testified that the fingerprints lifted from the stolen vehicle that belonged to Rashad Patterson, a friend of Lee.
{¶ 8} Officer Jemond Riffe ("Officer Riffe"), the police officer who responded to the May 18, 2016 robbery, testified that he spoke to Churchill, who recounted how he was robbed at gunpoint. Officer Riffe went back to the crime scene and located a receipt for a Pizza Hut delivery order. There was a phone number on the receipt, and Officer Riffe called the number. He heard a voicemail message saying, "This is Earron's phone." (Tr. 747.) Also Detective Michael Reese ("Detective Reese") investigated the phone number and discovered that it was associated with Lee. Detective Reese located Lee's residence, which was in close proximity to both robberies. A search was conducted of Lee's residence, and a fresh Pizza Hut box was located in the basement. A search was conducted at Burkhalter's residence. The police located a pizza warmer bag. Burkhalter's mother voluntarily gave the police two BB guns.
{¶ 9} Lee testified that Burkhalter used Lee's cell phone to order the pizzas, and that he was not involved in the robberies. At the conclusion of the trial, the jury found Lee guilty and he was sentenced to 14 years imprisonment. As a result, he filed this appeal assigning five errors for our review.
I. Lee was denied his right to the effective assistance of counsel as guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution;
II. The convictions for the firearm specification were against the manifest weight of the evidence and not supported by sufficient evidence;
*510 III. The convictions for the underlying charges of aggravated robbery, robbery, kidnapping and theft, were against the manifest weight of the evidence and not supported by sufficient evidence due to a lack of identification testimony;
IV. The trial court erred when it overruled Lee's Batson challenge regarding the peremptory challenge of Juror No. 12 ; and
V. The trial court committed plain error when it granted the State's motion for joinder and tried both indictments together.
II. Ineffective Assistance of Counsel
A. Standard of Review
{¶ 10} The Sixth Amendment of the United States Constitution guarantees the right to assistance of counsel because counsel plays an important role in our court system. "Counsel * * * can also deprive a defendant of the right to effective assistance, simply by failing to render adequate 'legal assistance.' " Strickland v. Washington , 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), citing Cuyler v. Sullivan , 446 U.S. 335, 345-350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. State v. Trimble , 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland at 689 [104 S.Ct. 2052]. The defendant has the burden of proving his counsel rendered ineffective assistance. State v. Perez , 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 223. The test is stated in the conjunctive, so the failure to demonstrate either prong is dispositive.
State v. Dennis , 2017-Ohio-4437, 93 N.E.3d 277, ¶ 17.
B. Law and Analysis
{¶ 11} In Lee's first assignment of error, he argues that he was denied his right to effective assistance of counsel because of counsel's failure to object to the joinder of two separate robberies into one trial and counsel also failed to file a motion to suppress an unreliable out-of-court identification.
" 'Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers.' " State v. Edgerson , 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593 [2015 WL 758992], ¶ 6, quoting State v. Quinones , 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544 [2014 WL 7186212], ¶ 18 ; see also State v. Conway , 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101 ("debatable trial tactics" do not constitute ineffective assistance of counsel). A reviewing court, therefore, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland at 689 [104 S.Ct. 2052] ; State v. May , 8th Dist. Cuyahoga No. 102482, 2015-Ohio-4275, 49 N.E.3d 736.
State v. Pridgett , 8th Dist. Cuyahoga No. 101823, 2016-Ohio-687, 2016 WL 762671, ¶ 36.
*511 {¶ 12} Lee argues that he was prejudiced by the joinder of the two indictments because he was characterized as a person who regularly robs pizza delivery drivers. Crim.R. 8(A) states,
[t]wo or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.
Crim.R. 14 states,
[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires.
{¶ 13} " 'The law favors joining multiple offenses in a single trial if the requisites of Crim.R. 8(A) are fulfilled. If it appears, however, that the defendant would be prejudiced by the joinder, a trial court may grant a severance under Crim.R. 14.' " Pridgett at ¶ 38, quoting State v. Ferrell , 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, 2014 WL 4924034, ¶ 38. " 'A defendant is not prejudiced by joinder where the joined offenses are "simple and direct, so that a jury is capable of segregating the proof required for each offense.' " " Ferrell at ¶ 39, quoting State v. Wilson , 2d Dist. Montgomery No. 20910, 2005-Ohio-6666, 2005 WL 3446275, quoting State v. Fletcher , 2d Dist. Clark No. 2003-CA-62, 2004-Ohio-4517, 2004 WL 1908336, ¶ 41.
In deciding a claim of ineffective assistance of counsel, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington , 466 U.S. 668 at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. "[T]hat is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citation omitted.) Id. "Trial strategy, including debatable trial tactics, does not constitute ineffective assistance of counsel." State v. Benitez , 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334 [2013 WL 2470685], ¶ 31, citing State v. Conway , 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 111. Indeed, the decision to file a motion for separate trials or to proceed with the joinder of the offenses may be a matter of counsel's trial strategy. Benitez at ¶ 31, citing State v. Bishop , 8th Dist. Cuyahoga No. 53278 [1988 WL 5996, at *3-4], 1988 Ohio App. LEXIS 246, *9 (Jan. 21, 1988).
Id. at ¶ 40.
{¶ 14} Lee's contention that the jurors might view him as an individual that likes to rob pizza deliverymen is without merit. The record reveals that the offenses were of the same or similar character; constituted a common scheme or plan; or was part of a course of criminal conduct. The record also reveals that trial counsel had discussed the motion to sever with Lee and, as a trial tactic, decided against filing the motion.
STATE: Just to clarify. The state has filed a motion for joinder for indictment. I don't know if any ruling has been made on that.
*512 COURT: Yeah. It came up a little earlier. My understanding is there's no objection.
COUNSEL: There's no objection. I have discussed it with my client, and as a strategy we have decided not to oppose that motion.
(Tr. 122-123.)
{¶ 15} After a review of the record, we are not convinced that Lee's trial counsel erred in not filing a motion to sever. Counsel clearly stated that joining the indictments was an element of his trial strategy. Additionally, Lee has not demonstrated that he was prejudiced by counsel's decision. Lee was found not guilty of one of the counts of kidnapping. Therefore, it can be determined that the evidence presented to the jury was simple and direct. The jury was capable of separating the proof required for each offense.
{¶ 16} Lee also contends that he was denied effective assistance of counsel because his trial counsel did not file a motion to suppress what he considers an unreliable out-of-court identification and because a blind administrator did not conduct the photographic line-up.
"[S]ince the decision falls within matters of trial strategy, counsel is not required to file a motion to suppress evidence in every case." State v. Price , 8th Dist. Cuyahoga No. 90308, 2008-Ohio-3454 [2008 WL 2688095], ¶ 19. As a result, trial counsel is not per se ineffective when it fails to file a motion to suppress. State v. Madrigal , 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52 (2000), citing Kimmelman v. Morrison , 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Counsel's failure to file a motion to suppress constitutes ineffective assistance only when the defendant can show that the motion "would have 'had a reasonable probability of success' and affected the outcome of the case." State v. Patterson , 8th Dist. Cuyahoga No. 105265, 2017-Ohio-8318 [99 N.E.3d 970], ¶ 35, quoting State v. Sanchez [, 8th Dist. Cuyahoga No. 103078, 2016-Ohio-3167 [2016 WL 3019644], ¶ 26 ].
State v. Frierson , 2018-Ohio-391, 105 N.E.3d 583, ¶ 17.
{¶ 17} "An out-of-court identification must be suppressed if "the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." Id. at ¶ 18. Lee contends that McDonald's identification was unreliable because he picked out six different people during his identification process. The record reveals that the suggestive nature of McDonald's identification referred to another individual and not Lee. McDonald explained that he chose people with certainty from 50 percent to 70 percent. He also knew that three individuals were involved in the robbery. Five were chosen with 50 percent certainty. One individual was chosen with 70 percent certainty. In fact, McDonald chose Lee as a participant in the robbery with a 60 percent degree of certainty. (Tr. 732.) We therefore do not find that McDonald's identification was unreliable under all the circumstances.
{¶ 18} " R.C. 2933.83(B)(1) provides that a blind administrator must be used for a photo lineup unless impracticable. In the event it is impracticable to use a blind administrator, then the reason for the impracticability must be documented. R.C. 2933.83(B)(2)." State v. Lennon , 8th Dist. Cuyahoga No. 104344, 2017-Ohio-2753, 2017 WL 1957124, ¶ 66. The record reveals that a blind administrator was present during the photographic line-up. Lee has not demonstrated that his counsel's performance was defective or that the motion to suppress had a reasonable probability of *513 success. Lee's assertions are without merit.
{¶ 19} Lee's first assignment of error is overruled.
III. Sufficiency and Manifest Weight of Evidence
A. Standard of Review
{¶ 20} When an appellate court reviews a claim of insufficient evidence, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Leonard , 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, citing State v. Jenks , 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact." State v. Tenace , 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.
{¶ 21} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether,
"there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." (Emphasis sic.) State v. Getsy (1998), 84 Ohio St.3d 180, 193-194, 1998-Ohio-533, 702 N.E.2d 866, citing State v. Eley (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting State v. Martin , 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).
Leonard , 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229.
{¶ 22} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." State v. Thompkins , 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).
Weight of the evidence concerns the inclination of the greater amount of credible evidence , offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief ." (Emphasis added.)
Id. , quoting Black's Law Dictionary 1594 (6th Ed.1990).
{¶ 23} Also,
[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs v. Florida , 457 U.S. [31] at 42, 102 S.Ct. [2211] at 2218, 72 L.Ed.2d [652] at 661 [ (1982) ]. See also, State v. Martin , 20 Ohio App. 3d 172, 175, 485 N.E.2d 717, 720-721 (1983). ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility *514 of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").
Thompkins at 387, 678 N.E.2d 541.
B. Law and Analysis
{¶ 24} In Lee's second and third assignments of error, he contends that his convictions for the firearm specifications, aggravated robbery, robbery, kidnapping, and theft were against the manifest weight of the evidence and not supported by sufficient evidence.
The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. State v. Bowden , 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598 [2009 WL 2186608], ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Thompkins , 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541 (1997).
Pridgett , 8th Dist. Cuyahoga No. 101823, 2016-Ohio-687, 2016 WL 762671, at ¶ 15.
{¶ 25} Lee was convicted of two counts of aggravated robbery, in violation of R.C. 2911.01(A)(1) ; four counts of robbery, in violation of R.C. 2911.02(A)(1) and (2) ; two counts of robbery, in violation of R.C. 2911.02(A)(3) ; one count of kidnapping, in violation of R.C. 2905.01(A)(2) ; and two counts of petty theft, a first-degree misdemeanor, in violation of R.C. 2913.02(A)(1). Each felony count contained a one- and three-year firearm specification, in accordance with R.C. 2941.141(A) and 2941.145(A). The statutes read as follows:
(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.
R.C. 2911.01(A)(1).
(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control;
(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
(3) Use or threaten the immediate use of force against another.
R.C. 2911.02(A)(1), (2), and (3).
(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
(2) To facilitate the commission of any felony or flight thereafter.
R.C. 2905.01(A)(2).
(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
*515 (1) Without the consent of the owner or person authorized to give consent.
R.C. 2913.02(A)(1).
Imposition of a one-year mandatory prison term upon an offender under division (B)(1)(a)(iii) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense. The specification shall be stated at the end of the body of the indictment, count, or information, and shall be in substantially the following form:
"SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense.)"
R.C. 2941.141(A).
Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a)(ii) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. The specification shall be stated at the end of the body of the indictment, count, or information, and shall be stated in substantially the following form:
"SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense)."
R.C. 2941.145(A)
{¶ 26} First, Lee challenges the sufficiency and weight of the evidence with respect to the firearm specification. He specifically points to the fact that it was not proven beyond a reasonable doubt that Lee possessed a firearm. The police officers never found a firearm, only BB guns. However, the victims testified that Lee stated, when he robbed them, that he had a gun and they saw what looked like a gun. Neither witness could be sure if Lee possessed a real or a fake gun.
The firearm specification is described in R.C. 2941.145, which states in pertinent part: "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."
State v. Watkins , 8th Dist. Cuyahoga No. 84288, 2004-Ohio-6908, 2004 WL 2931008, ¶ 12.
{¶ 27} In defining the meaning of the term "firearm," this court uses R.C. 2923.11(B) :
(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, *516 and any firearm that is inoperable but that can readily be rendered operable.
(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.
{¶ 28} Lee argues that there is no evidence that a firearm was used.
The case law interpreting this statute has evolved over the years. Initially, in State v. Gaines , 46 Ohio St.3d 65, 545 N.E.2d 68 (1989), the Ohio Supreme Court held that "prior to imposition of an additional term of three years' actual incarceration for possession of a firearm during the commission of a felony, the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense." Id. , syllabus.
The [c]ourt then modified its ruling in State v. Murphy , 49 Ohio St.3d 206, 551 N.E.2d 932 [1990], when it clarified how the state could prove a firearm specification. Such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime. ( State v. Gaines , 46 Ohio St.3d 65, 545 N.E.2d 68 [1989], modified.)" Murphy , syllabus.
More recently, the [c]ourt added circumstantial evidence as a basis for proof: "A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm . ( State v. Murphy , 49 Ohio St.3d 206, 551 N.E.2d 932 [1990], State v. Jenks , 61 Ohio St.3d 259, 574 N.E.2d 492 [1991], and State v. Dixon , 71 Ohio St.3d 608, 646 N.E.2d 453 [1995], followed; R.C. 2923.11 [B][1] and [2], construed and applied.)" State v. Thompkins , 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 (1997), paragraph one of the syllabus, emphasis added.
The courts have differed in interpreting how much circumstantial evidence is enough to prove the existence of an operable firearm in the commission of a crime. Numerous cases support a conviction if the defendant states he has a gun and will use it, even if no one sees the gun and the gun is never produced at trial and therefore cannot be tested to determine whether it is operable. State v. Jeffers , 143 Ohio App.3d 91, 757 N.E.2d 417 (2001) ; State v. Haskins , 6th Dist. Erie No E-01-016, 2003-Ohio-70 [2003 WL 99572].
Additionally, case law supports conviction when a defendant flashes what appears to be a gun, even if it is never proved to be a gun or to be operable. State v. Dixon , 71 Ohio St.3d 608, 646 N.E.2d 453 (1995) ; State v. Nelson , 2d Dist. Montgomery No. 14775 [1995 WL 491084], 1995 Ohio App. LEXIS 3367 (Aug. 18, 1995). This is so even if the offender never states that he will use the gun if the victim does not comply with his orders; "the implicit threat of brandishing a firearm so as to threaten a victim is sufficient to establish its operability under R.C. 2923.11(B)."
*517 State v. McDade , 11th Dist. Lake No. 97-L-059 [1998 WL 682360, at *13], 1998 Ohio App. LEXIS 4533, at *33 (Sept. 25, 1998).
Watkins , 8th Dist. Cuyahoga No. 84288, 2004-Ohio-6908, 2004 WL 2931008, ¶ 13-17.
{¶ 29} The record reveals that Lee flashed what appeared to be a gun during both robberies. In fact, the gun was put to McDonald's head and Lee threatened to shoot him. Lee brandished the gun during the Churchill robbery and ordered him to drop everything. Both McDonald and Churchill believed that Lee had a real gun and behaved in a way that is consistent with them believing that he would discharge that gun. The facts in Watkins are similar to the facts in this case. The victim in Watkins testified that he believed he was being held at gunpoint. "First, the victim does not have to be '100 percent' certain that the unseen object is a gun. Second, the victim's actions in acquiescing to being robbed indicates * * * his belief that he was being held up at gunpoint. Under these circumstances, his inability to actually see the gun is not dispositive." (Citations omitted.) Id at ¶ 23. "The testimony of the victim is sufficient to support the conviction." Id. at ¶ 24. After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we determine that the jury did not lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Additionally, we find that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
{¶ 30} Lee's second assigned error is overruled.
{¶ 31} Lee also argues that his other convictions for aggravated robbery, robbery, kidnapping, and theft were not supported by sufficient evidence and were against the manifest weight of the evidence because the two victims were unable to positively identify him with 100 percent certainty.
Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. State v. Bradley , 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765 [2012 WL 2355778], ¶ 14, citing State v. DeHass , 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." State v. Wilson , 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." State v. Raver , 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958 [2003 WL 723225], ¶ 21, citing State v. Antill , 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).
State v. Torres , 8th Dist. Cuyahoga No. 99596, 2013-Ohio-5030, 2013 WL 6047869, ¶ 93.
{¶ 32} Although the witnesses were not 100 percent certain when they identified Lee in a photo identification, there was other evidence that led to Lee's conviction. Lee's cell phone number was on the pizza receipt. The police, during their investigation, found a fresh pizza box in Lee's home. Moreover, Burkhalter, Lee's codefendant, testified that he and Lee planned and executed the robbery of McDonald and Churchill. Burkhalter also testified that Lee held the gun.
*518 Thus, after weighing all of the evidence and all reasonable inferences, considering the credibility of witnesses, and determining whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered, we conclude that it did not.
Id. at ¶ 100. Additionally, we find that the evidence was sufficient to support the convictions. Lee's third assignment of error is overruled.
IV. Batson Challenge
{¶ 33} Lee, who is African-American, contends that the trial court erred when it overruled his Batson challenge regarding the peremptory challenge of an African-American juror.
"Whenever a party opposes a peremptory challenge by claiming racial discrimination, the duty of the trial court is to decide whether granting the strike will contaminate jury selection through unconstitutional means. The inquiry, therefore, is whether the trial court's analysis of the contested peremptory strike was sufficient to preserve a constitutionally permissible jury-selection process. A trial court's finding of no discriminatory intent will not be reversed on appeal absent a determination that it was clearly erroneous. The trial court, in supervising voir dire, is best equipped to resolve discrimination claims in jury selection, because those issues turn largely on evaluations of credibility." Martin v. Nguyen , 8th Dist. Cuyahoga No. 84771, 2005-Ohio-1011 [2005 WL 563763], ¶ 9.
State v. Saunders , 2016-Ohio-292, 58 N.E.3d 470 (8th Dist.), ¶ 6.
{¶ 34} Once defense counsel challenges a juror's dismissal based on the juror's race, it is incumbent on the court to conduct a Batson hearing to decide if there was merit to defense counsel's challenge.
"In order to state a prima facie case of purposeful discrimination under Batson v. Kentucky [, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ], an accused must demonstrate: (1) that members of a recognized racial group were peremptorily challenged; and (2) that the facts and circumstances raise an inference that the prosecutor used the peremptory challenge to exclude the jurors on account of their race."
Id. , quoting Martin v. Nguyen , 8th Dist. Cuyahoga No. 84771, 2005-Ohio-1011, 2005 WL 563763, ¶ 6.
{¶ 35} The trial court conducted a Batson hearing and determined that the state did not exclude the juror because of his race.
" 'A trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous.' State v. Pickens , 141 Ohio St. 3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 64, citing State v. Frazier , 115 Ohio St. 3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 64. This deferential standard arises from the fact that step three of the Batson inquiry turns largely on the evaluation of credibility by the trial court. See State v. Herring , 94 Ohio St.3d 246, 257, 2002-Ohio-796, 762 N.E.2d 940, citing Batson , 476 U.S. at 98, 106 S.Ct. 1712, 90 L.Ed.2d 69."
State v. Pierce , 2017-Ohio-8578, 100 N.E.3d 860, ¶ 28 quoting State v. Murray , 8th Dist. Cuyahoga No. 102779, 2016-Ohio-107, 2016 WL 193497, ¶ 22. After reviewing the record, we do not find that the trial court's decision was erroneous. The state's reason that it dismissed juror number 12 was because the juror was a pastor and had been involved in the criminal justice system as an advocate for victims and *519 defendants. The state's response was as follows:
Yes. It's not his race. It's the fact that as a pastor he's been involved with the criminal justice system before. He's been here for sentencings. He is involved. He's involved at the juvenile detention center. He's an advocate for victims, both victims or defendants. And the fact that he's assisted family members that were accused of crimes.
(Tr. 486.) We find that the trial court did not err in accepting the prosecutor's response as a race-neutral reason for dismissing the juror. We find that Lee has not demonstrated a prima facie case of purposeful discrimination under Batson .
{¶ 36} Lee's fourth assignment of error is overruled.
V. Joinder
A. Standard of Review
{¶ 37} "This court reviews a trial court's decision on joinder for an abuse of discretion. State v. Grimes , 8th Dist. Cuyahoga No. 94827, 2011-Ohio-4406 [2011 WL 3860503], ¶ 15, citing State v. Segines , 8th Dist. Cuyahoga No. 89915, 2008-Ohio-2041 [2008 WL 1903997]." State v. Wilson , 2016-Ohio-2718, 51 N.E.3d 676 (8th Dist.), ¶ 21. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore , 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).
"An unreasonable decision is one that is unsupported by a sound reasoning process; an arbitrary attitude is an attitude that is without adequate determining principle not governed by any fixed rules or standard; and unconscionable may be defined as affronting the sense of justice, decency, or reasonableness." State v. Hill , 10th Dist. Franklin No. AP-177, 2010-Ohio-6121 [2010 WL 5141707], ¶ 34.
State v. Hollins , 8th Dist. Cuyahoga No. 103864, 2016-Ohio-5521, 2016 WL 4480654, ¶ 17.
B. Law and Analysis
{¶ 38} Lee asserts that the trial court committed plain error when it granted the state's motion for joinder and tried both indictments together. Because his counsel did not object, he has waived all but plain error. Caruso v. Leneghan , 8th Dist. Cuyahoga No. 99582, 2014-Ohio-1824, 2014 WL 1775577, ¶ 70.
Under Crim.R. 52(B), notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long , 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined that, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
State v. Hughes , 8th Dist. Cuyahoga Nos. 98667 and 98668, 2013-Ohio-1550, 2013 WL 1696076, ¶ 25.
"If it appears that a defendant is prejudiced by joinder of offenses, the defendant may move to sever the charges under Crim.R. 14. Lott , 51 Ohio St.3d at 163, 555 N.E.2d 293. Crim.R. 14, relief from prejudicial joinder, provides, in relevant part:
If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as *520 justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."
Wilson at ¶ 39.
{¶ 39} Additionally,
[t]he defendant bears the burden of proving (1) his rights were prejudiced and (2) the trial court abused its discretion in denying severance. State v. Brinkley , 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29, citing [ State v. ] Torres , 66 Ohio St.2d 340, 343, 421 N.E.2d 1288, at syllabus (1981) ; see also State v. LaMar , 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166 (holding that a trial court's decision to deny severance will be reversed only upon a showing that the trial court abused its discretion).
Wilson at ¶ 40.
{¶ 40} Furthermore,
[i]n State v. Diar , 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, the Ohio Supreme Court explained that there are two ways that the state may rebut a defendant's claim of prejudicial joinder: "First, if in separate trials the state could introduce evidence of the joined offenses as 'other acts' under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder. State v. Lott , 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). Second, the state can refute prejudice by showing that 'evidence of each crime joined at trial is simple and direct.' Id. " [Diar] at ¶ 96.
Wilson , 2016-Ohio-2718, 51 N.E.3d 676, at ¶ 41.
{¶ 41} However,
[u]nder Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character, * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." In fact, "[t]he law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.' " State v. Lott , 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990), quoting Torres , 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). "Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." State v. Schaim , 65 Ohio St.3d 51, 58, 1992 Ohio 31, 600 N.E.2d 661 (1992). Accord Torres at 343 [421 N.E.2d 1288].
Wilson at ¶ 24.
{¶ 42} In line with what we have stated in Lee's first assignment of error, we hold that the appellant was not denied effective assistance of counsel and that trial court did not commit plain error in granting the state's motion for joinder. It was determined from the record that it was counsel's trial strategy to have a combined trial of the indictments. Therefore, there would not have been an objection. Also, Lee has not directed us to anything in the record that would show that, but for the error, the outcome of the trial would have been different. We find no manifest miscarriage of justice. The trial court did not err when it granted the state's motion for joinder.
{¶ 43} Lee's fifth assignment of error is overruled.
{¶ 44} Judgment is affirmed.
LARRY A. JONES, SR., J., CONCURS; KATHLEEN ANN KEOUGH, P.J., CONCURS IN JUDGMENT ONLY