[Cite as *State v. Riffle*, 2019-Ohio-3271.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,           :

                                  No. 107352

    v.                               :

JOSEPH RIFFLE,                          :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 15, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-618102-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Callista A. Plemel and Eben McNair, Assistant Prosecuting Attorneys, *for appellee.*

Jay F. Crook, Attorney at Law, L.L.C., and Jay F. Crook, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant Joseph Riffle ("Riffle") appeals from a jury trial where Riffle was found guilty of one count of cultivation of marijuana with a firearm specification, one count of drug possession with a firearm specification, and

forfeiture specifications requiring the forfeiture of five firearms. For the reasons that follow, we affirm.

## I. Statement of the Facts

{¶ 2} On June 6, 2017, the Cleveland Police received an anonymous Cuyahoga County Crime Stoppers email identifying Riffle's home address, 12901 Erwin Avenue, Cleveland, Ohio, and stating marijuana plants were growing in the backyard. Detective Pitts, Sergeant Dunst, and Detective Follmer went to McGowan Avenue, one street south of Erwin Avenue, to establish surveillance. Detective Pitts and Sergeant Dunst walked up the driveway of the house behind Riffle's and from the neighbor's backyard looked over a wooden fence. Detective Pitts described the fence as four to six feet tall. The evidence shows the officers did not use a ladder but looked over the fence and observed marijuana plants. Detective Pitts also smelled the distinct odor of growing marijuana plants. The officers informed Detective Follmer of their observations.

{¶ 3} The officers continued surveillance efforts while Detective Follmer returned to the First District to draft a search warrant and supporting affidavit and obtain the necessary signature. Upon executing the search warrant that same day, the officers first encountered Riffle exiting his home from the back doorway. Riffle was instructed that the officers had a search warrant for the house. Riffle denied having anything on his body, including drugs. Riffle was handcuffed and told he was under arrest for violating state law by cultivating marijuana in his backyard. Bodycam footage from the arrest shows an officer asked, "What's in the house" and

Riffle responded "marijuana." The footage shows Riffle was under arrest, but his wife had not provided entry through the front door or put the dogs in a secure area away from the police. Riffle and an officer discussed Mrs. Riffle's confusion and fear of the officer's presence and Riffle then stated, "There's weed downstairs." This comment was not in response to a question from an officer. An officer escorted Riffle into the living room and asked for his identification. Riffle's identification was in the garage. Since the garage was being inspected, Riffle was told to "wait a second" before he obtained his identification. No questions were posed to Riffle. Riffle then commented, "Yeah, go right ahead. There's nothing bad. There's nothing whatever. I got; I got my two guns are here. One downstairs in my band room. One is in my bedroom and there's nothing. I got no weapons on me." The bodycam footage shows Riffle was subsequently asked whether there was any money in the house. Riffle responded "no" and provided an itemization of the guns in the home. It is not clear whether Riffle was asked to identify all the guns. Riffle also stated the marijuana "is mine." The officers ultimately found four plants growing in the backyard as well as lighting, grow pots, marijuana, and numerous firearms inside the house.

{¶ 4} Riffle was arrested and charged with three counts: cultivation of marijuana with a one-year firearm specification; drug trafficking with a one-year firearm specification and forfeiture specifications related to multiple weapons; and drug possession with a one-year firearm specification and forfeiture specifications related to multiple weapons. Riffle pled not guilty on July 14, 2017. A suppression

hearing was held on January 2, 2018.  Riffle attempted to exclude the introduction of any evidence obtained through the search warrant.  The motion to suppress was denied on January 10, 2018.  The case proceeded to a jury trial on April 30, 2018.  The jury found Riffle guilty on all counts except drug trafficking, and Riffle was sentenced to a total prison term of one year, nine months.  Riffle filed this timely appeal on June 21, 2018, and presents the following assignments of error:

> First Assignment of Error:  Appellant was prejudiced by ineffective counsel in that trial counsel failed to fail [sic] a motion to suppress regarding evidence obtained from the custodial interrogation of Mr. Riffle.

> Second Assignment of Error:  The trial court committed reversible error in failing to find that the statements by the officers contained in the Affidavit offered to procure the warrant, when the statements containing material omissions of fact and material statements of factual impossibility, were sufficient to create probable cause to allow for the issuance of a warrant to search Mr. Riffle's premises.

> Third Assignment of Error:  Mr. Riffle was prejudiced by the ineffective assistance of trial counsel in that Trial Counsel failed to raise the issue of a Brady violation for a failure of the State of Ohio to ever provide a copy of the email containing the "tip" from the confidential informant accusing Mr. Riffle of criminal activity.

> Fourth Assignment of Error:  Appellant's trial counsel was ineffective in failing to file a motion in limine with regards to the introduction of seven (7) firearms into evidence and the trial court committed clear error in allowing the presentation and introduction of the seven (7) rifles as evidence into trial when it is established before the hearing that operability has not been established.

> Fifth Assignment of Error:  The numerous errors and ineffective acts throughout the trial process, while providing grounds for reversal of Mr. Riffle's conviction by themselves, also provide grounds for reversal as their cumulative nature resulted in a deprivation of Mr. Riffle's due process right to a fair trial.

## II.  Law and Analysis

### A. Ineffective Assistance of Counsel

{¶ 5}  Since Riffle argues ineffective assistance of counsel in his first and third assignments of error, these arguments will be addressed collectively.  Riffle's ineffective assistance of counsel argument regarding a motion in limine is discussed below under Section B, Firearms Evidence Admissibility.

{¶ 6}  The Ohio Supreme Court has repeated the well-established standard for reviewing claims of ineffective assistance of counsel: "[r]eversal of convictions for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *State v. Linder*, 8th Dist. Cuyahoga No. 106600, 2018-Ohio-3951, ¶ 35, citing *Strickland v. Washington* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 7}  Moreover, when a reviewing court considers an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action.  *See* S*tate v. Phillips,* 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).  Rather, the reviewing court "must be highly deferential." *Strickland* at 689.  As the *Strickland* court stated, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101,

76 S.Ct. 158, 100 L.Ed. 83 (1955). This standard of review is applied below when assessing Riffle's claims of ineffective counsel.

**Motion to Suppress**

{¶ 8} Riffle first alleges ineffective counsel because his trial counsel failed to file a motion to suppress Riffle's statements made during the execution of the search warrant. Specifically, Riffle claims that the officers did not inform him of his *Miranda* rights prior to him admitting marijuana and firearms were located in his home, and these statements would have been excluded from evidence had a motion to suppress been filed.

{¶ 9} "[S]ince the decision falls within matters of trial strategy, counsel is not required to file a motion to suppress evidence in every case." *State v. Price*, 8th Dist. Cuyahoga No. 90308, 2008-Ohio-3454, ¶ 19, citing *State v. Flors*, 38 Ohio App.3d 133, 528 N.E.2d 950 (8th Dist.1987), paragraph two of the syllabus. Trial counsel is not per se ineffective when it fails to file a motion to suppress. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). Counsel's failure to file a motion to suppress constitutes ineffective assistance only when the defendant can show that the motion "would have 'had a reasonable probability of success' and affected the outcome of the case." *State v. Patterson*, 2017-Ohio-8318, 99 N.E.3d 970, ¶ 35 (8th Dist.), quoting *State v. Sanchez,* 8th Dist. Cuyahoga No. 103078, 2016-Ohio-3167, ¶ 22.

{¶ 10} Officers utilized a bodycam during the execution of Riffle's search warrant. The bodycam does not represent every moment the arresting officers were

present with Riffle the night the search warrant was executed. However, the video and audio tape indicate *Miranda* rights were not read to Riffle prior to his commenting that "there is weed downstairs" and two guns were present in the home.

{¶ 11} "The duty to advise a suspect of *Miranda* rights does not attach until questioning rises to the level of a 'custodial interrogation.'" *State v. Gumm*, 73 Ohio St.3d 413, 429, 653 N.E.2d 253 (1995), citing *State v. Roe*, 41 Ohio St.3d 18, 21, 535 N.E.2d 1351 (1989). In judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a "reasonable person would have believed that he was not free to leave." *Gumm*, quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). *Accord Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Additionally, "the special procedural safeguards outlined in *Miranda*, are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "Interrogation is a measure of compulsion over and beyond that which is inherent in custody itself." *State v. Clark*, 7th Dist. Mahoning No. 08 MA 15, 2009-Ohio-3328, ¶ 27, citing *Innis* at 300. The *Innis* court clarifies interrogation as follows:

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the

suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.

*Innis* at 300-301.

**{¶ 12}** Upon executing the search warrant, Riffle was immediately placed in hand restraints and was told he was under arrest. The actions and questioning of the police gave rise to a custodial interrogation that typically requires a reading of one's *Miranda* rights. The police failed to read Riffle his *Miranda* rights.

**{¶ 13}** However, even if Riffle's statements were inadmissible due to the absence of the *Miranda* rights, the marijuana and firearms would have been found admissible under the inevitable discovery doctrine. "[I]llegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Blevins*, 2016-Ohio-2937, 65 N.E.3d 146, ¶ 39 (8th Dist.), citing *State v. Perkins*, 18 Ohio St.3d 193, 480 N.E.2d 763 (1985), syllabus. *See also State v. Jackson*, 57 Ohio St.3d 29, 36, 565 N.E.2d 549 (1991). "The inevitable discovery doctrine is appropriately triggered only in those instances where there has been an implementation of police investigative procedures that ultimately would have led to the certain discovery of the same evidence." *Blevins* at ¶ 40.

**{¶ 14}** However, for the inevitable discovery doctrine to apply, we must first determine whether the search of Mr. Riffle's home was conducted under a valid warrant. If the officers had a valid search warrant, they would have lawfully found

the marijuana and firearms despite the officers' failure to read Riffle his *Miranda* rights.

{¶ 15} To issue the search warrant, the magistrate needed a substantial basis to conclude there was a fair probability that contraband or evidence of the crime would be found at Riffle's home. *State v. Williams*, 8th Dist. Cuyahoga No. 88137, 2007-Ohio-3897, ¶ 10. "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *State v. Coleman*, 8th Dist. Cuyahoga No. 91058, 2009-Ohio-1611, ¶ 43, citing *State v. Banna*, 8th Dist. Cuyahoga Nos. 84901 and 89402, 2005-Ohio-2614, ¶ 23. The magistrate was provided a search warrant affidavit drafted by a 24-year veteran with the Cleveland Police Department, with the last ten years in the vice unit. The officer had training and experience in the detection, recognition, packaging, and selling of controlled substances and dangerous drugs and was involved in at least one thousand arrests of persons for violating state drug laws. The affidavit further stated the vice unit received a complaint about a white male growing marijuana at 12901 Erwin.

{¶ 16} The fact that the initial complaint was received by an anonymous tip is irrelevant because following the anonymous tip, the officers initiated an investigation and observed marijuana plants growing on Riffle's property. The probable cause supporting the search warrant came from both the anonymous tip and the preliminary investigation. The affidavit stated two officers from the vice unit had a clear view of approximately four marijuana plants growing in the backyard of 12901 Erwin and the officers smelled the marijuana plants. The

language within the affidavit reading "a clear view of the marijuana plants in Riffle's back yard [sic]" is not rendered a falsehood because the officers made their observations either over or through a fence. The officers stated they observed the marijuana plants and their view was not adversely affected by the fence. The affidavit also stated persons who traffic illegal drugs frequently keep weapons on or about their person or within their possession. The affidavit sufficiently set forth factors to establish the requisite probable cause needed to obtain the search warrant.

{¶ 17} The arresting officers were at Riffle's home with a valid search warrant that authorized police to look for marijuana plants and firearms. There is no question the marijuana located inside and outside the home would have been located and seized pursuant to the search warrant, regardless of Riffle's comments including "there is weed downstairs." The firearms would have also inevitably been located and seized. The police officers testified that when executing a search warrant for drugs, a primary concern is safety, and drugs and guns are often found together. In conducting the lawful search, officers would have sought and discovered Riffle's multiple weapons.

{¶ 18} Because the officers would have inevitably discovered the marijuana and firearms pursuant to the valid search warrant, Riffle was not prejudiced by trial counsel's failure to file a motion to suppress. Thus, Riffle's first assignment of error is overruled.

### *Brady* Violation

{¶ 19} Riffle next argues that his trial counsel was ineffective for failing to procure a copy of the anonymous email sent to the police that initiated the investigation against Riffle. Specifically, he claims counsel should have argued that a *Brady* violation occurred because the identity and content of the tip could have bolstered Riffle's argument that the state lacked probable cause to obtain the search warrant.

{¶ 20} "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

> In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. * * *

*Jackson*, 57 Ohio St.3d at 33, 565 N.E.2d 549, citing *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus. "'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.'" *Id.* at 33, quoting *United States v. Agurs*, 427 U.S. 97, 109-110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *see United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

{¶ 21} There is no reasonable probability of a different outcome if Riffle had been privy to the content of the anonymous email. The police became suspicious of Riffle's behavior upon the receipt of an anonymous Crime Stoppers email received by Sergeant Durst. Sergeant Durst did not have a copy of the email at trial and never knew the identity of the reporting individual since the tip was anonymous. Sergeant Durst could not speak to the informant's reliability, but recalls the email indicated a white male was growing marijuana in his backyard located at 12901 Erwin Avenue in Cleveland, Ohio. The police completed an investigation whereby they observed marijuana plants growing in Riffle's backyard. Questioning the identity of and information provided by the anonymous tipster would have no foreseeable impact on Riffle's defense or the outcome of the trial.

{¶ 22} Failure to raise a *Brady* violation where the state did not provide information pertaining to an anonymous tip did not constitute ineffective counsel. Therefore, Riffle's third assignment of error is overruled.

## B. Firearms Evidence Admissibility

{¶ 23} In his fourth assignment of error, Riffle argues the trial court erred in allowing the introduction and presentation of firearms where operability was established prior to trial. This assignment of error is reviewed for abuse of discretion. *State v. Fortson*, 8th Dist. Cuyahoga No. 92337, 2010-Ohio-2337, ¶ 23. Generally, relevant evidence is admissible. Evid.R. 402; *State v. Salti*, 8th Dist. Cuyahoga No. 106834, 2019-Ohio-149, ¶ 69. "Nevertheless, a trial court must exclude relevant evidence 'if its probative value is substantially outweighed by the

danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *Id.*, quoting Evid.R. 403. "The term 'unfair prejudice' in relation to a criminal defendant refers to the ability of some relevant evidence to sway the factfinder into rendering a guilty verdict on a ground different from the state's proof of the alleged offense." *State v. Bell*, 1st Dist. Hamilton Nos. C-050537 and C-050539, 2007-Ohio-310, ¶ 61.

{¶ 24} Riffle's trial counsel did not stipulate to the operability report of the 9 mm handgun, so we cannot say the probative value of introducing that single gun, which was the basis of the state's gun specification charge, was unduly prejudicial. However, the introduction of the remaining six firearms, several of which were high-caliber rifles that looked like assault weapons, had a great potential to instill unfair prejudice into the jurors' deliberations. The probative value of the six firearms as physical exhibits was minimal at best. The trial court abused its discretion in admitting the six guns into evidence where their probative value was substantially outweighed by the danger of unfair prejudice.

{¶ 25} Yet, any error "which does not affect the substantial rights of the defendant shall be disregarded." *State v. Batie*, 8th Dist. Cuyahoga No. 101234, 2015-Ohio-762, ¶ 11; *see also* Crim.R. 52. "The term 'substantial rights' has been interpreted to require that the error be prejudicial — that is that it must have affected the outcome of the trial court proceedings." *Batie* at ¶ 11, citing *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7. We are confident that the jury would have reached the same conclusions even if the six guns had not been admitted into evidence. The lighting, grow pots, marijuana, and 9 mm handgun

found when executing the search warrant as well as the officers' trial testimony supported the charges of cultivation of marijuana with a firearm specification, drug possession with a firearm specification, and forfeiture specifications. The introduction of the six guns did not alter the outcome of the case and was harmless error.

{¶ 26} Riffle also avers trial counsel was ineffective when he did not file a motion in limine preventing the introduction and presentation to the jury of seven confiscated weapons. Defense counsel did not file a motion in limine, but engaged in a discussion with the prosecutor and the judge, prior to trial, and objected to the introduction of firearms on the grounds that they were prejudicial. We find the introduction and presentation of the guns did not prejudice the defense so as to deprive Riffle of a fair trial. The fact that Riffle was found not guilty of drug trafficking indicates the jury was not prejudiced by the introduction of the firearms and decided the case on its merits. Because Riffle cannot satisfy the second prong of the *Strickland* test, we need not address the first prong.

{¶ 27} The fourth assignment of error is overruled.

### C. <u>**Validity of the Search Warrant**</u>

{¶ 28} "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 14, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Banks-*

*Harvey* at ¶ 14. *See State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "But the appellate court must decide the legal questions independently, without deference to the trial court's decision." *Banks-Harvey* at ¶ 14, citing *Burnside* at ¶ 8.

{¶ 29} In his second assignment of error, Riffle challenges the veracity of the warrant affidavit presented to the judge to obtain the search warrant. Specifically, Riffle claims the affidavit did not support granting a search warrant because (1) the affidavit was based on hearsay of an anonymous tip and the judge was not informed an anonymous tip was provided in this case, and (2) the affidavit contained false statements that the officers had a clear view into the backyard of 12901 Erwin Avenue when they actually looked over a fence to observe the marijuana plants.

{¶ 30} To suppress evidence obtained with a search warrant, it is necessary to review the affidavit supporting the warrant. Search warrant affidavits enjoy a presumption of validity. *State v. Sheron*, 8th Dist. Cuyahoga No. 98837, 2013-Ohio-1989, ¶ 29. Where a warrant is based on false material in the affidavit that is necessary to establish probable cause, the fruits of the search warrant should be suppressed. *Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). A challenge to the factual veracity of a warrant affidavit requires allegations of deliberate falsehood or reckless disregard for the truth. *State v. Roberts*, 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980). Even if a defendant makes a preliminary showing of such a false statement, a hearing is not required unless, without the allegedly false statements, the affidavit is unable to support a finding of probable cause. *Roberts* at 178.

{¶ 31} Riffle argues the affidavit is based on hearsay because the information is based on an anonymous tip and there is no basis for the reliability of the individual tipster. Paragraphs 2 and 3 of the search warrant affidavit specifically reference the Riffle house:

> **Paragraph 2**: The first District Vice Unit received a complaint of a white male growing marijuana in the back yard [sic] of 12901 Erwin Avenue.

> **Paragraph 3**: On 6-6-17, Detective Pitts and Sgt. Mike Dunst went to McGowan Avenue where they could have a clear view into the back yard [sic] of 12901 Erwin Avenue. Sgt. Mike Dunst and Detective John Pitts could observe approximately four plants of marijuana approximately 4 feet tall. Affiants further aver they could smell the order [sic] marijuana.

{¶ 32} As we stated previously, under Ineffective Assistance of Counsel — Motion to Suppress, probable cause for the search warrant was based on both the anonymous tip and the officers' subsequent investigation. The initial reliance on an anonymous tip did not adversely affect the reliability of the information.

{¶ 33} Additionally, the statement in paragraph 3 that the officers had a clear view into the backyard of Riffle's property is not a false statement made either intentionally or with a reckless disregard for the truth. The officers testified their view of the plants growing in the backyard of 12901 Erwin was not obscured by the fence. The magistrate had probable cause to issue the search warrant. The affidavit did not contain a false statement made either intentionally or with a reckless disregard for the truth. Furthermore, no reasonable expectation of privacy existed when police officers stood on Riffle's neighbor's property and saw marijuana growing in Riffle's yard. *State v. Ritchie*, 2d Dist. Miami No. 2000-CA-20, 2000

Ohio App. LEXIS 3848, 8 (Aug. 25, 2000); *State v. Staton*, 2d Dist. Greene No. 90-CA-62, 1991 Ohio App. LEXIS 1009 (Mar. 15, 1991).

{¶ 34} The search warrant affidavit presented probable cause to support the issuance of a search warrant. The trial court did not err in overruling Riffle's motion to suppress and, as a result, appellant's second assignment of error is overruled.

### D. <u>Cumulative Error</u>

{¶ 35} In his final assignment of error, Riffle argues the cumulative effect of all the errors in his trial deprived him of his constitutional right to a fair trial. Because we found no merit to his first four assignments of error, Riffle's fifth assignment of error is overruled.

{¶ 36} For the foregoing reasons, the trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

MARY J. BOYLE, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR